**TRUCK DRIVERS, WAREHOUSEMEN & HELPERS OF JACKSONVILLE, LOCAL UNION NO. 512, Affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Plaintiff,**

v.

**Henry D. BAKER, Jessie L. Hall, Jr., Brenda L. Wheeler and James H. Wheeler, Defendants.**

**No. 79–333–Civ–J–M.**

United States District Court, M. D. Florida, Jacksonville Division.

July 9, 1979.

Thomas J. Pilacek, Orlando, Fla., for plaintiff.

No appearance for defendants.

## MEMORANDUM OPINION AND ORDER

MELTON, District Judge.

This cause is before the Court on the motion of the plaintiff, Truck Drivers, Warehousemen and Helpers of Jacksonville, Local Union No. 512 (Local 512), for leave to commence a suit for money damages against the defendants, all of whom are former officers of Local 512. Jurisdiction is predicated on Section 501 of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. § 501 (1970). Section 501 of the LMRDA provides, among other things, that prior to bringing suit under this statute leave of the court must be obtained upon verified application and for good cause shown. Sec. 501(b) LMRDA, 29 U.S.C. § 501(b).

■ Subchapter VI of the LMRDA is entitled "Safeguards for Labor Organizations." Section 501(a) of that subchapter imposes a fiduciary relationship upon officers and agents of labor organizations with respect to the unions and labor associations they serve.[1] Section 501(b) of Subchapter VI of the LMRDA is an enforcement provision which authorizes suit in federal court by a member of a labor organization against any officers of his labor organization, or union, who breach the fiduciary obligations established by Sec. 501(a). Section 501(b) reads, in pertinent part:

(b) When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte . . . .

An action under this provision is analogous to a shareholders' derivative action. *See, e.*g., *Nelson v. Johnson,* 212 F.Supp. 233, 297–98 (D.Minn.), aff'd. 325 F.2d 646 (8th Cir. 1963); *Phillips v. Osborne,* 403 F.2d 826, 831 (9th Cir. 1968); *Brink v. DaLesio,* 453 F.Supp. 272 (D.Md.1978).

■ Section 501(b) of the LMRDA clearly confers a federal cause of action upon members of labor organizations to sue officers of their organizations for breach of fiduciary obligations; however, in the instant case the plaintiff is not a *member* of a labor organization but is itself a labor organization. Thus the question presented to the Court is: does Local 512, as a labor organization, have standing under Sec. 501(b) of the LMRDA to bring a suit against its former officers for an alleged breach of their fiduciary obligations? For the reasons stated in the remainder of this opinion, the Court concludes that Local 512 does not have standing to sue and shall therefore deny the union leave to proceed under Sec. 501 of the LMRDA.

■ The intent of Congress in enacting Sec. 501(b) was to weed out instances of corruption and breach of trust on the part of labor management, to preserve the rights of individual union members, and to insure high standards of responsibility on the part of union officers. *Brink v. DaLesio, supra*; *Richardson v. Tyler,* 309 F.Supp. 1020 (N.D. Ill.1970); *Purcell v. Keane,* 277 F.Supp. 252 (E.D.Pa.1967), aff'd. 406 F.2d 1195 (3rd Cir. 1969). *See also,* [1977] 3 Lab.L.Rep. (CCH) ¶¶ 7302–7307. The plaintiff urges the Court to allow it to proceed under Sec. 501(b), notwithstanding the fact that it is not a "member" of a labor organization, asserting

1. Section 501(a) reads:

(a) The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and by-laws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy.

that Congress' intent in enacting Sec. 501(b) would be frustrated by a strict construction.[2] Specifically, the plaintiff argues that standing under Sec. 501(b) should be conferred upon it to effectuate Congress' desire that labor management have the right to "clean up their own unions whenever such a cleansing is required or is necessary".[3]

The Court agrees that Congress intended to encourage labor management in policing internal union affairs, otherwise it would not have included the "right of first refusal" provision found within Sec. 501(b). However, the Court disagrees with the plaintiff that Congress ever intended to confer upon labor unions a federal cause of action against union employees or officers. Not only is the plain language of Sec. 501(b) contra to such a proposition, but a careful review of the legislative history of the LMRDA also reveals that not even so much as a suggestion appears that unions, as opposed to individual members of unions, should be able to sue under that provision. *See*, NLRB, Legislative History of the Labor-Management Reporting and Disclosure Act of 1959 (1959). Additionally, the only court which has addressed the issue has expressly ruled against the plaintiff's contention that it should be entitled to sue under Sec. 501(b).[4] In *Safe Workers' Organization, Chapter No. 2 v. Ballinger*, 389 F.Supp. 903 (S.D.Ohio 1974), the Court ruled that it was without jurisdiction to entertain a Sec. 501(b) action brought by a labor organization against its officers, holding that a labor organization was an im-

proper party plaintiff to commence such an action.

 Besides asserting that the legislative intent behind Sec. 501 should entitle it to sue under that provision, the plaintiff also argues that to deny it standing under Sec. 501 is to leave it with no effective remedy because, the plaintiff maintains, Florida courts will not adjudicate internal labor disputes. This argument is without merit.

Although it is true that Florida courts are reluctant to entertain lawsuits involving the internal affairs of labor unions, *see, e. g., Stanton v. Harris*, 152 Fla. 736, 13 So.2d 17 (1943), relief may nonetheless be obtained from those courts where a property right is involved. *McCune v. Wilson*, 237 So.2d 169, 171 (Fla.1970); *Grand Lodge K.P. of Florida v. Taylor*, 79 Fla. 441, 84 So. 609 (1920); *Taite v. Bradley*, 151 So.2d 474 (Fla. 1st Dist.Ct.App. 1963). In the instant case, a property right is clearly involved as the putative defendants allegedly converted union funds to their personal use. For that reason, the Court doubts that a Florida court would refuse to entertain the plaintiff's action.

Moreover, even assuming *arguendo* that the Florida courts would refuse to hear the plaintiff's suit, relief is still not entirely precluded under Sec. 501. Should Local 512's management decide, for whatever reasons, that an action in state court is impractical, a *member* of Local 512, after making the proper demand upon the union, could then file suit in federal court under Sec. 501.[5] In such a circumstance, the jurisdic-

**2.** At the Court's request, the plaintiff submitted a memorandum of law in support of its motion for leave to commence suit.

**3.** 105 Cong.Rec. 1889 (daily ed. Feb. 6, 1959) (remarks of Sen. Mundt), *reprinted in* II NLRB, Legislative History of the Labor-Management Reporting and Disclosure Act of 1959, at 998 (1959).

**4.** The plaintiff cites the case of *Weaver v. United Mine Workers of America*, 160 U.S.App.D.C. 314, 492 F.2d 580 (1973) as authority for allowing a labor union standing to sue under Sec. 501(b). That case is inapposite to the inquiry at hand. In *Weaver*, the Court held that a

labor union could properly realign itself as a party-plaintiff in a Sec. 501 action previously commenced by a union member—the Court did not address the question of whether a labor union could properly *commence* such an action in its own stead.

**5.** Neither Sec. 501 nor any other law authorizes a federal district court to determine whether internal union decisions are right or wrong, wise or unwise. Thus, it would be improper for the Court to question Local 512's management decision concerning whether or not it should seek relief in the state courts. *See, e. g., Local No. 1 (ACA), Broadcast Employees of the International Brotherhood of Teamsters, Chauf-*

tional requirements of the statute would be fulfilled and the union could ultimately recover damages, as the relief obtainable under Sec. 501 inures solely to the benefit of the labor organization and not to the individual union member who brings the suit. Sec. 501(b) LMRDA, 29 U.S.C. § 501(b).

Finally, aside from the fact that the Court disagrees with the plaintiff's interpretation of the legislative history of Sec. 501, or with its assertion that it cannot obtain relief in state court, there is another compelling reason for denying the plaintiff standing to sue. A liberal interpretation of the jurisdictional scope of Sec. 501(b) would be contrary to the well-established principle that statutes which extend the jurisdiction of federal courts must be strictly construed. *Owen Equipment and Erection Co. v. Kroger,* 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978); *Victory Carriers, Inc. v. Law,* 404 U.S. 202, 212, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971); *Healy v. Ratta,* 292 U.S. 263, 270, 54 S.Ct. 700, 78 L.Ed. 1248 (1933); *Flaherty v. Warehousemen, Garage and Service Station Employees' Local Union No. 334,* 574 F.2d 484, 487 (9th Cir. 1978); *Kerbow v. Kerbow,* 421 F.Supp. 1253, 1258 (N.D.Tex.1976).

In sum, the Court concludes that neither the legislative history of Sec. 501 of the LMRDA nor applicable case law indicates that a labor organization should have standing to sue under that statute. Accordingly, it is

ADJUDGED:

That the plaintiff's motion for leave to commence suit pursuant to 29 U.S.C. § 501(b) is hereby denied.

ORDERED at Jacksonville, Florida, this 9th day of July, 1979.

feurs, Warehousemen and Helpers of America v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, 419 F.Supp. 263, 274 (E.D.Pa.1976).