INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIP BUILDERS, BLACKSMITHS, FORGERS AND HELPERS, AFL–CIO, Plaintiff,

v.

LOCAL LODGE D111 OF the CEMENT, LIME, GYPSUM AND ALLIED WORKERS, DIVISION OF the INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIP BUILDERS, BLACKSMITHS, FORGERS AND HELPERS, AFL–CIO; Ronnie Brant, Individually and as President of Local Lodge D111; Marsha Pinkney, Individually and as Recording Secretary of Local Lodge D111; and Freddie Stephens, Individually and as Financial–Secretary of Local Lodge D111, Defendants.

No. CV487–127.

United States District Court, S.D. Georgia, Savannah Division.

Dec. 15, 1987.

James McAleer, Savannah, Ga., for plaintiff.

John C. Falkenberry, Joe R. Whatley, Jr., Falkenberry and Whatley, Birmingham, Ala., for defendants.

## ORDER

EDENFIELD, District Judge.

Before the Court is the motion for summary judgment of plaintiff, International Brotherhood of Boilermakers.

### I. *Background*

This action was brought by the International Brotherhood of Boilermakers (hereinafter IBB) against one of its subordinate local lodges (Local Lodge D111) and certain of the local's lodge officers. Plaintiff seeks to enforce contractual and fiduciary obligations allegedly owing to IBB by defendants.

IBB is an international labor organization headquartered in Kansas City, Kansas. In April, 1984, IBB merged with the United Cement, Lime, Gypsum and Allied Workers International Union (hereinafter CWI). The terms of the merger between the two internationals were set forth in a document executed on April 1, 1984, and entitled Merger Agreement. The Merger Agreement provided that the CWI and its affiliated district councils would cease to exist as separate entities and would merge into the Cement Division of the IBB.

The Merger Agreement called for all CWI local unions in existence at the time of the merger to become and remain affiliated with the Cement Division of the IBB. The Agreement required the IBB to issue IBB charters to those locals, which charters were to replace the former CWI charters. The CWI local numbers were retained except that after the merger the numbers were preceded by a "D" to identify such locals as affiliated with the Cement Division of the IBB. Defendant Local Lodge D111 (hereinafter "D111") was one of the local unions formerly affiliated with CWI and, pursuant to the terms of the Merger Agreement, the IBB issued a charter to D111.

After the merger, D111 and IBB jointly represented employees at the Gold Bond Building Products facility in Savannah, Georgia.

Pursuant to the terms of the Merger Agreement and the IBB Constitution, Local Lodge D111 was obligated to make payments to the IBB in the form of Per Capita Tax/Division Fund payments. The local lodge was required to submit, on a monthly basis, a per capita payment in an amount of 1.65 times the base labor rate at the lodge.

Plaintiff alleges that defendants have breached the Merger Agreement and Union Constitution by failing to transmit to IBB the required payments for the months of July, 1986 through January, 1987, inclusive. Defendants do not dispute this claim. Plaintiff also alleges that defendants have breached contractual obligations under the Union Constitution to make monthly membership reports and quarterly financial reports to IBB. Defendants do not controvert this claim either.

On January 16, 1987, an election was held by the National Labor Relations Board (NLRB) to determine the appropriate collective bargaining representative of the employees at the Gold Bond Building Products facility in Savannah. A majority of the employees who voted rejected the IBB and its local lodge D111 as their exclusive bargaining agent. Instead, they selected a new representative: the Independent Workers of North America (IWNA). IWNA was certified by the NLRB as the new exclusive collective bargaining agent as a result of the election.

Plaintiff alleges that, pursuant to a provision in the IBB Constitution, the local

IBB charter of D111 was revoked after the employees at Gold Bond rejected IBB as their representative. As a result, plaintiff contends D111 is required to turn over all books, records, properties, funds and assets owned or held by D111 at the time of the revocation of its IBB charter to IBB pursuant to the IBB Constitution.

Defendants contend that they are entitled to retain their local treasury pursuant to a provision of the Merger Agreement which they allege both conflicts with the IBB Constitution and is controlling.

Plaintiff requests the following relief: (1) judgment in the amount of $10,797.15 representing the past due Per Capita Tax/Division Fund payments for the months of July, 1986 through January, 1987; (2) an order enjoining defendants from disposing of, or in any manner changing the current status of, properties, funds, and assets of D111; (3) an order directing the defendants to render an accounting of any and all properties, funds and assets of former Local Lodge D111 in the control of defendants during the period from July 1, 1986 to the present; (4) an order directing defendants to deliver to IBB any and all funds and property of former Local Lodge D111 in their possession or control; (5) an order directing defendants to submit, upon request of IBB, the monthly membership reports and quarterly audit reports for the periods during which such reports were not provided through the date of the revocation of the charter of Local Lodge D111; and (6) continued jurisdiction by this Court until all issues arising out of this action are resolved.

## II. *Analysis*

### A. Jurisdiction

The Court has jurisdiction pursuant to Section 301(a) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a), which confers jurisdiction over suits for violations of contracts between labor organizations. Both the IBB Constitution and the Merger Agreement at issue here are contracts between labor organizations within the meaning of 29 U.S.C. § 185(a). *See Plumbers and Pipefitters v. Local 334,* 452 U.S. 615, 101 S.Ct. 2546, 69 L.Ed.2d 280 (1981).[1] In addition, the Court has pendent jurisdiction over plaintiff's state law breach of fiduciary duty claims against the individual union officials. There is no need to address whether the Labor Management Reporting and Disclosure Act gives standing to unions to sue for breach of fiduciary duties by union officials under 29 U.S.C. § 501[2] because, as will be seen, all of the relief sought by plaintiff is available pursuant to contractual rights, and it is unnecessary to reach the merits of plaintiff's breach of fiduciary duty claims.

### B. Per Capita Tax/Division Fund Payments

Defendants concede that under both the IBB Constitution, Article XXIII, § 3(b), and the Merger Agreement, Article XII, they were required to pay, on a monthly basis, a per capita payment in an amount of 1.65 times the base labor rate at the Lodge.

Plaintiff has shown, through the affidavit of Henry Bechtoldt, Vice-president of

---

**1.** The Court rejects defendants' contention that § 301 jurisdiction does not extend to the claims against the individual union officials because there is not a "significant impact on labor-management relations." The Supreme Court rejected the significant impact requirement in *Plumbers and Pipefitters v. Local 334,* 452 U.S. 615, 624–25, 101 S.Ct. 2546, 2551–52, 69 L.Ed.2d 280. Section 301 does not allow, however, for the recovery of monetary damages against individual union officials. *See* 29 U.S.C. § 185(b); *Complete Auto Transit, Inc. v. Reis,* 451 U.S. 401, 101 S.Ct. 1836, 68 L.Ed.2d 248 (1981); *Rogers v. Fedco Freight Lines, Inc.,* 564 F.Supp. 1169, 1174 (S.D.Ohio 1983).

**2.** Title 29 U.S.C. § 501(b) expressly confers standing only on union members, not unions

themselves. Most of the cases addressing the issue have held that unions do not have such standing. *See Local 624, International Union of Operating Engineers v. Byrd,* 659 F.Supp. 274 (S.D.Miss.1986); *Graphic Arts International v. Local No. 529,* 529 F.Supp. 587 (W.D.Mo.1982); *Local No. 512, IBT v. Baker,* 473 F.Supp. 1120 (M.D.Fla.1979); *Safe Workers' Organization v. Ballinger,* 389 F.Supp. 903, 907–08 (S.D.Ohio 1974). *But see BRAC v. Orr,* 95 LRRM 2701 (E.D.Tenn.1977) (standing of unions to sue for breach of fiduciary duty under 29 U.S.C. § 501(b) is implied by requirement that union members desiring to sue under the statute first make demand upon their union to file suit).

IBB, that the base rate for Local Lodge D111 was fixed at $8.27, and that Local Lodge D111 had 113 dues paying members. *See* Bechtoldt Affidavit at 6, ¶ 13. Accordingly, the monthly amount due as the Per Capita Tax/Division Fund Payment was $1,542.45, which sum was not paid as required for the months of July 1986 through January 1987, inclusive. Thus, according to plaintiff, the total amount due is $10,797.15.

Defendants have not controverted plaintiff's allegations or figures with respect to this claim. Accordingly, plaintiff's motion for summary judgment with respect to the Per Capita Tax/Division Fund payments is GRANTED for the full amount sought: $10,797.15.

### C. Monthly Membership Reports and Quarterly Financial Reports

Under the IBB Constitution, the Secretary–Treasurer (Financial Secretary) of Local Lodge D111 was obligated both to submit monthly membership reports, and to make quarterly financial reports to plaintiff. IBB Constitution, Article XXV, Section 7(a). Plaintiff alleges that Local Lodge D111 has not made all of the required monthly membership reports and quarterly audit reports. *See* Bechtoldt Affidavit at 8, ¶ 16. This allegation is uncontroverted. Accordingly, plaintiff's motion for summary judgment is GRANTED with respect to the claim that defendants breached their contractual obligation to submit monthly membership reports and quarterly financial reports.

### D. Surrender of Local's Assets Upon Revocation of Charter

The question whether Local Lodge D111 was required to surrender its assets to plaintiff upon disbandment is the only *bona fide* issue of dispute between the parties. Resolution of this issue depends upon the meaning of certain provisions in the Union Constitution and the Merger Agreement.

Plaintiff relies on, and seeks to enforce, Article V, Section 6 of the IBB Constitution, which provides that

Any Local Lodge having less than ten (10) active members shall be automatically disbanded and its Charter returned to the International Brotherhood, together with all books, records, properties, funds and assets (including trusts, trust funds or other trust properties held, operated or controlled by such Local Lodge) owned or held by such Local Lodge at the time of such disbanding, which shall become the property of the International Brotherhood.

Plaintiff also relies on Article XXXVI, Section 2 of the IBB Constitution, which provides in pertinent part:

The funds and property of a subordinate body are trust funds for the benefit of its members and shall not be divided in any manner among the members of the subordinate body. Upon the surrender, forfeiture or revocation of its charter other than through consolidation, all funds belonging to such subordinate body shall be forwarded promptly to the International Secretary/Treasurer and all real estate and other property owned or held by such body shall be immediately transferred and conveyed by the proper legal instrument to the International Board of Trustees of the International Brotherhood.

It is undisputed that, after the NLRB election of January 16, 1987, Local Lodge D111 ceased to have ten (10) or more members, and was automatically disbanded. Plaintiff contends that, in accordance with the above-quoted provisions (hereinafter the "Surrender Clauses"), it is entitled to all books, records, properties, funds and assets owned or held by Local Lodge D111 at the time of its disbandment.

Defendants contend that a provision in the Merger Agreement conflicts with, and overrides, the Surrender Clauses.

The Merger Agreement provides in its preamble as follows:

The Constitution of the International Brotherhood of Boilermakers ... will be the supreme law of the merged organization.

All provisions of this Agreement are binding and those provisions which con-

flict with the above referred to Constitution will expire at 12:01 a.m. on the convening date of the Twenty–Eighth Consolidated Convention.

The Twenty–Eighth Consolidated Convention will not convene until 1991. Thus, provisions of the merger agreement which conflict with the Constitution are controlling until 1991.

Article V, Section 3 of the Merger Agreement provides, in pertinent part:

> Local Union Charters held by the current Local Unions in the [CWI] will have issued in their stead Boilermaker Charters carrying the present local numbers preceded by a capital D. *Each Local Lodge will retain its Local Union Treasury.* (Emphasis added).

Defendants argue that this provision (the "Retain Clause") conflicts with the Surrender Clauses, and is controlling. The defendants' argument is unavailing. The Surrender Clauses in the Constitution and the Retain Clause in the Merger Agreement are not in conflict, and may be easily reconciled.

The Merger Agreement governed *the effect of the merger* on local treasuries. Pursuant to the Merger Agreement, local lodges, including Local Lodge D111, did not have to surrender their treasuries upon consummation of the merger. The local lodges retained, and exercised independent control over, their treasuries. Local Lodge D111 received the benefit of the Retain Clause; during D111's existence as a local lodge of IBB, it retained its treasury.

The Merger Agreement does not provide, however, that the *members* of a local lodge may "retain" the local treasury after the local lodge has disbanded and dissolved. The Merger Agreement provides only that *the local lodge* shall retain the local treasury; when the local lodge ceases to exist and its charter is duly revoked, the Retain Clause no longer applies. The Merger Agreement does not address the contingency of disbandment of a local lodge. The Constitution, however, does address the contingency of disbandment. The Constitution provides that, in the event of disbandment, funds and assets of the local are forfeited to the plaintiff.

Additional language in the IBB Constitution, Article V, Section 6 (the Surrender Clause), supports this construction.

> If ten (10) or more members maintain membership in such Local Lodge and otherwise comply with the provisions of this Constitution, all books, records, properties, funds, and assets ... owned or held by such Local Lodge shall remain the property of such Local Lodge *so long as the charter is maintained.*

The Retain Clause in the Merger Agreement is wholly consistent with the Union Constitution. During its continued existence as a local lodge of IBB, D111 retained its local union treasury. Now that D111 is no longer a local lodge of IBB, it must surrender its assets to IBB in accordance with the IBB Constitution which, according to the Merger Agreement, is the "supreme law of the merged organization."

The substantive law under 29 U.S.C. § 185(a) which the Court has applied in its construction of these labor contracts "is federal law, which courts must fashion from the policy of our national labor laws." *Plumbers and Pipefitters v. Local 334,* 452 U.S. 615, 627, 101 S.Ct. 2546, 69 L.Ed. 2d 280 (1981). The Court in *Plumbers* noted that the purpose of Congress in enacting the LMRA was to promote industrial stability and stability among labor organizations. Several courts have already recognized, as is obvious, that the enforcement of clauses requiring a local to surrender its assets upon disaffiliation contributes to the stability of labor organizations. *See Phillips v. Perrin,* 253 Or. 540, 450 P.2d 767, 771 (1969) ("A rule that would permit seceding locals to take their property with them in defiance of international constitutional provisions ... could breed a renewal of raiding by rival unions as well as the fragmentation of established international unions to the ultimate disadvantage of the workmen...."); *Bradley v. O'Hare,* 11 A.D.2d 15, 202 N.Y.S.2d 141, 148, (1960) (enforcement of clauses requiring locals to surrender their assets contributes to the stability of labor organizations).

Another indication of federal labor policy, and further support for the Court's construction of the relevant contract provisions in this case, can be found in the

Labor Management Reporting and Disclosure Act, 29 U.S.C. § 501(a):

> The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, expend the same in accordance with its constitution and by-laws and any by-laws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party in any manner connected with his duties. . . .

To construe the Merger Agreement as allowing local union officials to take away the local treasury after disaffiliation would conflict with the dictates of 29 U.S.C. § 501(a), which requires local union officials to remain loyal to the parent organization. These fiduciary duties exist whether or not the union itself has standing to bring suit for breach of such fiduciary duties under § 501(b). *See supra*, note 2.

The Retain Clause in the Merger Agreement is consistent with the Surrender Clauses in the Union Constitution. By virtue of the Retain Clause, Local Lodge D111 was entitled to retain its local treasury upon consummation of the merger and during its existence as a local lodge of IBB. By virtue of provisions of the Union Constitution, all funds and assets of Local Lodge D111 were forfeited to IBB upon disbandment.

III. *Conclusion*

For the foregoing reasons, plaintiff's motion for summary judgment is GRANTED. It is hereby ORDERED as follows:

(1) that the defendants are hereby restrained from disposing of or in any manner changing the current status of any funds or property of former Local Lodge D111 of the IBB which is in their possession or control;

(2) that the defendants render a complete accounting to the plaintiff of any funds or property of former Local Lodge D111 which has been in their possession or control at any time during the period from July 1, 1986 to the present;

(3) that judgment in the amount of $10,797.15 be entered in favor of plaintiff and against defendant Local Lodge D111, representing past due Per Capita Tax/Division Fund payments;

(4) that defendants deliver any and all funds or property of former Local Lodge D111 which is in their possession or control to plaintiff;

(5) that defendants, upon request of plaintiff, submit the monthly membership reports and quarterly audit reports for the periods during which they were not provided up to the date of revocation of the charter of Local Lodge D111;

(6) This action will remain on the civil docket for the adjudication of any issue in regard to the Court's Order. Upon final resolution, by agreement, compliance, or otherwise, plaintiff will submit an appropriate final order.