INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIP BUILDERS, BLACKSMITHS, FORGERS AND HELPERS, AFL–CIO, Plaintiffs–Appellees,

v.

LOCAL LODGE D111 OF the CEMENT, LIME, GYPSUM AND ALLIED WORKERS DIVISION OF THE INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, et al., Defendants–Appellants.

No. 88–8032.

United States Court of Appeals, Eleventh Circuit.

Nov. 2, 1988.

John C. Falkenberry, Falkenberry & Whatley, Birmingham, Ala., Bernard N. Katz, Meranze and Katz, Philadelphia, Pa., for defendants-appellants.

Robert L. Dameron, Blake & Uhlig, Michael J. Stapp, Kansas City, Kan., James Edward McAleer, Downing, McAleer & Gaskin, Savannah, Ga., for plaintiffs-appellees.

Before TJOFLAT and FAY, Circuit Judges, and SHARP *, District Judge.

FAY, Circuit Judge:

Local Lodge D111 (Local D111), a former subordinate local lodge of the appellee union, International Brotherhood of Boilermakers (International), appeals the district court's order granting summary judgment in favor of International. Local D111 asserts that the district court erred in permitting International to take control of all funds, property, and assets which the local retained subsequent to its disaffiliation from International. Moreover, Local D111 contends that it was error for the district court to require it to remit past due per capita tax/division fund payments and

---

* Honorable G. Kendall Sharp, U.S. District Judge for the Middle District of Florida, sitting by

designation.

submit monthly membership and quarterly audit reports to International.[1] The local argues that its agreement executed with International pursuant to the merger allows it to retain its assets and treasury upon disaffiliation. We hold that the International's constitution is consistent with the merger agreement and that the provisions of the constitution requiring forfeiture of a local's assets upon its disbandment from the International contractually bind the parties. Local D111 must therefore relinquish its assets to International and submit the required payments and reports. Accordingly, the order of the district court granting International summary judgment is affirmed.

## I. BACKGROUND

The facts of this case, which the parties do not dispute, are thoroughly set forth in the trial court's order. *See International Brotherhood of Boilermakers v. Local Lodge D111*, 681 F.Supp. 1570 (S.D.Ga. 1987). For clarification however, we highlight the more relevant facts here.

The International Brotherhood of Boilermakers is an international labor organization which, together with Local D111, formerly served as collective bargaining representative of the employees of the Gold Bond Building Products facility in Savannah, Georgia. On April 1, 1984, International merged with the United Cement, Lime, Gypsum, and Allied Workers International Union (CWI) upon execution of a merger agreement setting forth the terms of the merger. The merger agreement consolidated CWI and its local affiliates into the Cement Division of International. Local 111 of CWI was issued an International charter and became Local D111 of the merged organization. The preamble to the merger agreement expressly provides

that International's constitution "will be the supreme law of the merged organization." (R. 2–9–Plaintiff's Exhibit No. 2.) Consequently, upon merger, Local D111 became bound by International's constitution and its directives.

In August 1986, delegates attending International's constitutional convention reaffirmed the merger. However, the adverse outcome of a Cement Division vice-presidential election held at the convention created dissention among several locals. In September 1986, Local D111 voted to disaffiliate from International. Local D111 retained its treasury and assets and refused to submit periodic membership and audit reports to International as required by its constitution.

On January 16, 1987 at a National Labor Relations Board (NLRB) election held to determine the appropriate collective bargaining representative for the Gold Bond employees, the employees rejected International as their representative and voted to affiliate with a rival international union; the Independent Workers of North America (Independent). The NLRB then certified Independent as the exclusive collective bargaining agent of the disaffiliated local. Upon learning of the NLRB election, International notified Local D111 on February 11, 1987 that the local was automatically disbanded and its charter revoked for lack of active union membership in accordance with International's constitution.

International brought suit against Local D111 seeking to enforce the contractual obligations outlined in its constitution pertaining to distribution of assets after a local disaffiliates from its parent union. International's constitution expressly provides that upon disbandment, assets of a local lodge shall be forfeited to the Interna-

---

1. Additionally, the local asserts that no federal court jurisdiction exists in this suit. We find that the district court properly exercised jurisdiction pursuant to Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), which confers jurisdiction in the federal courts over suits alleging violations of contracts between labor organizations. International's constitution and the merger agreement are contracts within the meaning of this section. *See*

*Plumbers and Pipefitters v. Local 334*, 452 U.S. 615, 622, 101 S.Ct. 2546, 2550, 69 L.Ed.2d 280 (1981) (just as a union constitution is a "contract" within the plain meaning of § 301(a), so too is it clear that [an international and its local] are "labor organization[s] representing employees in an industry affecting commerce as defined in this chapter.") Consequently, there is federal jurisdiction over this suit.

tional (forfeiture clauses). Additionally, the constitution and merger agreement require Local D111 to remit monthly per capita tax/division fund payments to International calculable at 1.65 times the base labor rate at the lodge. The constitution also mandates Local D111 to submit monthly membership and quarterly financial reports to International.

Local D111 never contested its obligations under the constitution nor its failure to abide by it from July 1986 through January 1987. However, Local D111 did contend that the merger agreement conflicted with and controlled the International constitution. Thus, pursuant to a merger agreement clause allowing each local lodge to retain its treasury after the merger (retain clause), Local D111 refused to forfeit its assets.

The district court concluded that International was entitled to judgment as a matter of law since the only issues presented concerned unambiguous contractual language and involved no genuine questions of material fact. In so ruling, the court found that the forfeiture clauses of International's constitution and the retain clause of the merger agreement were consistent, and that read together, these contractual provisions called for forfeiture of the local's funds and assets to International. We agree with the district court's conclusions.

## II. ANALYSIS

Since this is an appeal from the grant of summary judgment, we must examine the evidence in the light most favorable to Local D111. *See* Fed.R.Civ.P. 56(c); *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987). Summary judgment is proper only if no genuine issue of material fact exists

and if International is entitled to judgment as a matter of law. *Id.* Although we find that no genuine issue of material fact exists in this case [2], we must examine whether International is entitled to summary judgment as a matter of law.

### A. Forfeiture of Assets and Treasury

The contractual relationship between International and Local D111, as set forth in the union's constitution and the merger agreement, provides the basis for analyzing whether International is entitled to the local's assets and treasury. Under contract law principles, "where the language of a contract is unambiguous, the legal effect of that language is a question of law." *Orkin Exterminating Co., Inc. v. F.T.C.*, 849 F.2d 1354, 1360 (11th Cir. 1988). The preliminary inquiry of whether a contractual ambiguity exists is also a question of law which the court may resolve summarily. *Id.; Freeman v. Continental Gin Co.*, 381 F.2d 459, 465 (5th Cir.1967). A contract term is ambiguous if it is reasonably susceptible of more than one interpretation. *Orkin, supra,* at 1360. However, a party cannot create a contractual ambiguity merely by asserting that it exists. Likewise, disputes over contractual terms, standing alone, reveal no ambiguity. *Id.* (citing *Vreeland v. Federal Power Comm'n*, 528 F.2d 1343, 1351 (5th Cir. 1976))

The trial court found the contractual language unambiguous, and ruled as a matter of law that the union constitution embodied the supreme law of the merged organization while the merger agreement governed *"the effect of the merger* on local treasuries." *Local Lodge D111, supra,* at 1574. In reviewing the district court's

---

**2.** The court rejects Local D111's contention that genuine issues of material fact exist in this case. Each of the alleged factual disputes relate to asserted defenses and involve purely legal questions stemming from the court's interpretation of the unambiguous contracts between the labor organizations involved here. According to the United States Supreme Court: "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish

this purpose." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Moreover, "the mere existence of *some* alleged factual dispute ... will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Local D111 has failed to specify facts which show a genuine issue for trial. Thus, the district court applied the correct summary judgment standard here.

findings that the contract is unambiguous, we examine the disputed contractual terms in the context of the entire agreement, giving the words their plain and ordinary meaning as understood by a reasonable person. *Universal Towing Co. v. United Barge Co.*, 579 F.2d 1098, 1101 (8th Cir. 1978). Given the plain language of these agreements, we find the district court's conclusions reasonable.

Article V, Section 6 of International's constitution states:

> Any Local Lodge having less than ten (10) active members shall be automatically disbanded and its Charter returned to the International Brotherhood, together with all books, records, properties, funds, and assets (including trusts, trust funds or other trust properties held, operated or controlled by such Local Lodge) owned or held by such Local Lodge at the time of such disbanding, which shall become the property of the International Brotherhood.

Article XXXVI, Section 2 of the constitution also provides, in pertinent part:

> The funds and property of a subordinate body are trust funds for the benefit of its members and shall not be divided in any manner among the members of the subordinate body. Upon the surrender, forfeiture or revocation of its charter other than through consolidation, all funds belonging to such subordinate body shall be forwarded promptly to the International Secretary–Treasurer and all real estate and other property owned or held by such body shall be immediately transferred and conveyed by the proper legal instrument to the International Board of Trustees of the International Brotherhood.

Local D111 cites two provisions in the merger agreement which it contends conflict with and override International's constitution. First, Article V, Section 3 of the Merger Agreement provides in relevant part:

> Local Union Charters held by the current Local Unions in the [CWI] will have is-

sued in their stead Boilermaker Charters carrying the present local numbers preceded by a capital D. Each Local Lodge will retain its Local Union treasury.

Second, the preamble to the merger agreement states:

> The Constitution of the International … will be the supreme law of the merged organization.

> All provisions of this Agreement are binding and those provisions which conflict with the above referred to Constitution will expire at 12:01 a.m. on the convening date of the Twenty–Eighth Consolidated Convention.[3]

As the district court noted, Local D111's contention that the retain clause conflicts with the forfeiture clauses is without merit. Following established contract principles, the plain language of these provisions shows that they are consistent. The retain clause in the merger agreement is located under Article V which is entitled "Jurisdiction of District and Local Lodges." The scope of this section encompasses the changes the CWI locals would undergo as a result of the merger with International. Pursuant to this provision, the local lodges retained their local treasuries after completion of the merger.

This section does not conflict with Article V or Article XXXVI of International's constitution. Those articles involve forfeiture of the local's assets after the local ceases to maintain at least ten active members, ie; upon disaffiliation and revocation of its charter. While the merger agreement permitted the locals to maintain control over their assets and treasury while affiliated with International after the merger, once the local no longer existed, it lost this control. This reading of the two clauses is clear and unambiguous.

The parties do not dispute that on January 16, 1987, after Local D111 ceased to be a local lodge of International upon affiliation with Independent, the active membership of *Local D111* fell below ten members. (Stipulation R. 2–13–2). Nor do the parties disagree that in February, 1987 In-

---

**3.** The Twenty-Eighth Consolidated Convention  is scheduled to convene in the year 1991.

ternational revoked Local D111's charter for precisely this reason. *Id.* International clearly possessed the power, pursuant to the unambiguous terms of its constitution, to disband Local D111 automatically after it learned of the local's affiliation with a rival union.

After the disaffiliation, the constitutional forfeiture provisions went into effect requiring Local D111 to surrender its assets and treasury to International. The district court correctly concluded that the retain clause of the merger agreement operated to vest control over the local's treasury in the local subsequent to the merger, *only* while it remained part of the parent union. Article V, Section 6 of the constitution reiterates this view:

> If ten (10) or more members *maintain membership* in such Local Lodge and *otherwise comply with the provisions of this Constitution,* all books, records, properties, funds and assets ... owned or held by such Local Lodge shall remain the property of such Local Lodge *so long as the Charter is maintained* (emphasis added).[4]

Once Local D111 ended its affiliation with International and lost its charter, it could no longer exercise control over the assets pursuant to the merger agreement. Since the provisions of these agreements are consistent and the language is unambiguous, we find that the forfeiture clauses contractually mandate Local D111 to surrender its assets and treasury to International.[5]

Several other federal courts have reached the same conclusion on identical facts. In *International Brotherhood of Boilermakers v. Local Lodge D296,* 687 F.Supp. 469, 470 (D.Ariz.1988), another case involving the same International constitution and merger agreement, the district court held that the local affiliate must surrender all funds and assets it retained subsequent to the revocation of its charter. The court stated that the retain clause of the merger agreement did not supersede the International constitution, but rather was wholly consistent with it. *Id.* Moreover, the court found that the local's obligations regarding the submission of payments and reports continued from the disaffiliation date through the date the charter was revoked. *Id.* at 471. Consequently, it was required to remit the fees and file the reports with International.

Similarly, the district court in *International Brotherhood of Boilermakers v. Local Lodge D238,* 678 F.Supp. 1575, 1582 (M.D.Ga.1988) held that "[u]pon the disbandment of the lodges and the revocation of the charters, the assets must, pursuant to the ... provisions in the Boilermaker's constitution, be forfeited to the parent international. The local lodges agreed to this requirement." *See also International Brotherhood of Boilermakers v. Local Lodge 714,* 663 F.Supp. 1071 (N.D.Ill.1987), *vacated,* 845 F.2d 687, 692 (7th Cir.1988) (if less than ten members comprised local after disaffiliation, all property and assets revert to the international).[6] Thus, Local

---

**4.** This provision (in Article V of the International constitution) wholly comports with the similarly listed Article V of the merger agreement. Both articles vest control of the assets in the local lodge so long as its charter is maintained. The retain clause itself supports this view since it permits only the *local lodge* to retain control of its treasury after the merger. The merger agreement vests no control in the individual members of the local regarding the assets. Article XXXVI, Section 2 of International's constitution expressly prohibits division of the local's assets among the individual members. Considering these clauses together, the local is contractually obligated to surrender its assets upon disaffiliation.

**5.** Additionally, Local D111 is bound by the directives set forth in Article V, Section 6 of the

constitution since the merger agreement, upon which the local exclusively relies as the controlling contract between the parties, specifically designates the International constitution as the supreme law governing the parties. Likewise, Local D111's by-laws expressly recognize International's constitution as the "governing document for the International Brotherhood and all its affiliated bodies, including district and local lodges...." (R. 2–9 Plaintiff's Exhibit No. 4.)

**6.** Various federal courts have dealt with cases involving similar issues between the same unions. *See International Brotherhood of Boilermakers v. Local Lodge D461,* 663 F.Supp. 1031, 1035 (M.D.Ga.), *aff'd,* 835 F.2d 1439 (11th Cir. 1987); *International Brotherhood of Boilermak-*

D111 must surrender its assets and treasury.

### B. Per Capita Tax/Division Fund Payments

Local D111 contends that the district court erred in requiring it to remit past due Per Capita Tax/Division Fund Payments in the amount of $10,797.15 for the period extending from July 1986 through January, 1987. The local argues that since International's actions caused the breakdown of collective bargaining representation necessitating its disaffiliation, it was not obligated to remit the monthly fees from that date. We affirm the district court's ruling that the local is contractually bound to pay this amount.

Local D111 admits its obligation, pursuant to Article XXIII, Section 3(b) of International's constitution and Article XII of the merger agreement, to pay a monthly per capita fee to International based on the labor rate at the lodge. Additionally, Local D111 does not dispute International's figures regarding the monthly amount due. Since no genuine factual issue exists concerning this claim and the agreements clearly delineate the local's contractual obligations, we hold as a matter of law that International is entitled to the full amount claimed. *See Local Lodge D296, supra,* at 471 (local's failure to notify international that it was forfeiting its charter contractually bound local to pay the tax until the date the charter was revoked).

### C. Monthly Membership and Quarterly Financial Reports

The same reasoning applies to Local D111's assignment of error to the district court's ruling that it was obligated to submit monthly membership and quarterly financial reports to International. Article XXV, Section 7(a) mandates the local's Secretary–Treasurer to submit these reports. International claims it is entitled to them. Local D111 again, does not dispute this

ers v. *Local Lodge D405,* No. 87–24–PCT–EHC, slip op., 17 (D.Ariz. April 25, 1988); *International Brotherhood of Boilermakers v. Local Lodge D474,* 673 F.Supp. 199 (W.D. Tex.1987).

We note, however, that the district court in *International Brotherhood of Boilermakers v. Lo-*

contractual requirement but argues that its obligation ceased upon its disaffiliation. We agree with the district court that the constitution clearly specifies the local's duties and that it was bound by the provision until the date International revoked its charter for lack of active union membership.

### III. CONCLUSION

International's constitution and the merger agreement comprise the contract between the parties here. The contract is unambiguous and its provisions are consistent. The constitution clearly requires a local to forfeit its assets upon disaffiliation from the parent union. Moreover, it specifically delineates the local's obligations to remit per capita fees and submit periodic status reports. Accordingly, the district court's grant of summary judgment in favor of International is AFFIRMED.

cal Lodge *D504,* No. 87–5689, bench op., (E.D.Pa. April 21, 1988) held that although the local must forfeit its assets upon disaffiliation from the International, it could retain its treasury. We decline to follow this holding.