United States Court of Appeals,

Eleventh Circuit.

No. 95-8869.

INTERNATIONAL UNION OF ELECTRONIC, ELECTRICAL, SALARIED, MACHINE & FURNITURE WORKERS, AFL-CIO, on its own behalf, and on behalf of its former local affiliate, IUE Local Union 353B, also formerly known as Pabst Brewery Workers of Georgia, Local 353, Plaintiff, Counterdefendant-Appellant,

v.

John E. STATHAM, III, individually and as trustee and former officer of IUE Local Union 353B, formerly known as Pabst Brewery Workers of Georgia, Local 353; Melvin Griffin, individually and as trustee and former officer of IUE Local Union 353B, formerly known as Pabst Brewery Workers of Georgia, Local 353; Henry E. Sumner, individually and as trustee and former officer of IUE Local Union 353B, formerly known as Pabst Brewery Workers of Georgia, Local 353, Defendants, Crossdefendants-Appellees,

K. Thomas Hall;

Lynward Barrett, individually and d.b.a. Landmark Realty; Defendants-Appellees,

Robert L. Mobley, Jr., Defendant, Crossclaimant, Counterclaimant-Appellee.

Oct. 23, 1996.

Appeal from the United States District Court for the Middle District of Georgia. (No. 5:94-CV-97-3), Duross Fitzpatrick, Chief Judge.

Before CARNES, Circuit Judge, and FAY and JOHN R. GIBSON[*], Senior Circuit Judges.

JOHN R. GIBSON, Senior Circuit Judge.

The International Union of Electronic, Electrical, Salaried, Machine & Furniture Workers, AFL-CIO, appeals the district court's dismissal, for lack of jurisdiction, of the union's suit based on the sale of real estate that the union claims belongs to it. The

_____

[*]Honorable John R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit Court of Appeals, sitting by designation.

union sued the three former union officials who sold the land, as well as their lawyer, a real estate broker, and the buyer of the land, alleging breach of fiduciary duties by the former officials and numerous other causes of action. The union sought specific performance of provisions in the union constitution, injunctive and declaratory relief, and damages. The district court held that there was no federal jurisdiction under 29 U.S.C. § 501 (1994) or 29 U.S.C. § 185(a) (1994) for this suit by a union against its former officials. The court dismissed the suit. We reverse.

The real estate was originally purchased by a local union of brewery workers at the Pabst brewery in Perry, Georgia. The local was an affiliate of the International Union of United Brewery, Flour, Cereal, Soft Drink and Distillery Workers of America, AFL-CIO, known as the IUB. In 1973 the local broke away from the IUB and established the "Pabst Brewery Workers of Georgia" as a successor to the former local of the IUB. The local retained the same officers as it had before the disaffiliation. As part of the disaffiliation agreement, the members of the local agreed that all the local's property should be transferred to the Pabst Brewery Workers of Georgia. Accordingly, John E. Statham, III, Melvin Griffin, and Henry E. Sumner, the officers of the former IUB local and of the new independent local, executed a quitclaim deed transferring the land with the union hall to "John Statham, Melvin Griffin, and Henry Sumner, trustees of Pabst Brewery Workers of Georgia, a voluntary unincorporated association."

The local became a directly affiliated local union of the AFL-CIO on November 5, 1973. In 1975 the local built a union hall on

the real estate.  Later, in 1983, the local became an affiliate of the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers, AFL-CIO, the plaintiff in this case.

The local dissolved in 1989 because the brewery closed.  The plaintiff international union's constitution provided:

> In the even[t] that a local's charter is revoked, or that a local disbands or dissolves, the local's secretary and trustees shall send to the Secretary-Treasurer all funds and property belonging to the local....  If such a charter is not reissued within the year, the funds and property held by the Secretary-Treasurer shall be deemed to be the property of the Union and shall be deposited in the International Defense Fund."

At the last meeting of the local's executive board, the local authorized the international union's representative, Gary Tucker, to wind up the local's affairs.

Tucker entered an agreement to sell the land with the union hall on it to Robert L. Mobley, Sr., but the deal fell through because the title search showed that the title was vested in Statham, Griffin, and Sumner.  Tucker asked the trustees to quitclaim the land to the union, but instead Statham then sold the property to Mobley.  Lynward Barrett acted as broker for the sale, and J. David Byars acted as Statham's lawyer.  Byars held the $62,000 sale proceeds in escrow, so that he could obtain the signatures of Griffin and Sumner on the deed.  Before Byars could obtain the signatures, he learned that the union was claiming it owned the property.  Byars filed an interpleader action in state court and tendered the money into court.

The union filed suit in federal court, on its own behalf and on behalf of the former local, asserting claims for breach of fiduciary duty, 29 U.S.C. § 501, and breach of contract, 29 U.S.C.

§ 185(a), against Statham, Griffin, and Sumner. The union also stated numerous state law claims against Statham, Griffin, and Sumner, as well as Byars, Mobley, and Barrett.[1]

Byars's interpleader action was removed to federal court and joined with the union's suit.

The district court dismissed the union's complaint for lack of jurisdiction upon determining that the union did not state a federal cause of action under either the Labor-Management Disclosure and Reporting Act, 29 U.S.C. § 501, or the Labor-Management Relations Act, 29 U.S.C. § 185(a). Specifically, the court held that section 501 does not create a federal cause of action that can be asserted by a union, as opposed to an individual union member. The court also held that section 185(a) does not cover a suit by a union against individuals, as opposed to a suit against another labor union or an employer.

The union appeals, arguing that section 501(a) creates a cause of action that can be asserted by a union as well as by union members, and that it can assert a section 185(a) claim against former officers. These issues are pure questions of law, subject to de novo review.

I.

The question of whether a union may assert a cause of action under section 501 of the Labor-Management Reporting and Disclosure Act has been thoroughly examined by many courts, and they have

---

[1]Both Byars and Mobley have died. Their personal representatives, K. Thomas Hall and Robert L. Mobley, Jr., have been substituted for them as parties in this case.

arrived at opposite conclusions.[2]

Section 501 deals with civil liability in two parts.[3]

[2]The courts that have concluded that section 501 does *not* create a cause of action that can be asserted by a union are: *Building Material and Dump Truck Drivers, Local 420 v. Traweek,* 867 F.2d 500, 506-07 (9th Cir.1989); *Local 443, Int'l Bhd. of Teamsters v. Pisano,* 753 F.Supp. 434, 436 (D.Conn.1991); *International Bhd. of Boilermakers v. Freeman,* 683 F.Supp. 1190, 1191-93 (N.D.Ill.1988); *Crosley v. Katz,* 131 L.R.R.M. 2175, 2176-77, 1988 WL 94283 (E.D.Pa.1988); *Local 624, Int'l Union of Operating Engineers v. Byrd,* 659 F.Supp. 274, 276 (S.D.Miss.1986); *Truck Drivers v. Baker,* 473 F.Supp. 1120, 1122-24 (M.D.Fla.1979); *Teamsters, Local 20 v. Leu,* 94 L.R.R.M. 2510, 1976 WL 1685 (N.D.Ohio 1976); and *Safe Workers Org. v. Ballinger,* 389 F.Supp. 903, 906-08 (S.D.Ohio 1974). The following courts have concluded that section 501 does create a cause of action that a union can assert: *International Longshoremen's Ass'n, Local 1624 v. Virginia Int'l Terminals, Inc.,* 914 F.Supp. 1335, 1338-40 (E.D.Va.1996); *Morris v. Scardelletti,* 148 L.R.R.M. 2995, 3000-01, 1995 WL 20224 (E.D.Pa.1995); *Operative Plasterers & Cement Masons v. Benjamin,* 776 F.Supp. 1360, 1363-66 (N.D.Ind.1991); *Glenn v. Mason,* No. 79 Civ. 3918 (S.D.N.Y. Aug. 18, 1980); and *BRAC v. Orr,* 95 L.R.R.M. 2701, 2702, 1977 WL 1661 (E.D.Tenn.1977). *See also Weaver v. UMW,* 492 F.2d 580, 586 (D.C.Cir.1973) (permitting union to realign as plaintiff in section 501 case).

The Supreme Court noted the conflict of authority without resolving it in *Guidry v. Sheet Metal Workers Nat. Pension Fund,* 493 U.S. 365, 374-75 n. 16, 110 S.Ct. 680, 686 n. 16, 107 L.Ed.2d 782 (1990).

[3]29 U.S.C. §§ 501(a) and (b) provide:

**(a) Duties of officers; exculpatory provisions and resolutions void**

The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws, and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal

Subsection (a) imposes fiduciary duties on union officials. Subsection (b) confers jurisdiction on the federal courts for suits brought by individual union members on the union's behalf to enforce the duties created by subsection (a). Subsection (b) also places procedural limits on an individual's right to enforce the subsection (a) duties, analogous to the demand prerequisites for bringing shareholder derivative suits. Under subsection 501(b) an individual who wishes to sue for breach of an official's subsection 501(a) fiduciary duty must first request the union to proceed against the official. Only if the union fails to act within a reasonable time after the request may the individual proceed to

interest which conflicts with the interests of such organization....

**(b) Violation of duties; action by member after refusal or failure by labor organization to commence proceedings; jurisdiction; leave of court; counsel fees and expenses**

When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte. The trial judge may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation.

federal court.

Subsection 501(b) does not itself confer jurisdiction over suits by the union, but it assumes that a union can sue its officials; otherwise, it would be futile for individuals to request the union to sue and senseless to make the individuals engage in a futile act. By giving the union the right of first refusal to the cause of action, section 501(b) shows Congress preferred that the union, rather than individual members, sue on its own behalf. *Weaver v. UMW,* 492 F.2d 580, 586 (D.C.Cir.1973). One of the early cases on this issue reasoned that if Congress assumed unions could sue, and even preferred direct action by the union to a derivative-type suit by individuals, Congress must have intended that the unions have access to federal courts. *See BRAC v. Orr,* 95 L.R.R.M. 2701, 2702 (E.D.Tenn.1977).

Other courts have answered that Congress did not necessarily intend to give the unions a federal cause of action. Congress could conceivably have intended to relegate the unions to state law remedies. These courts say that, in the absence of any explicit authorization from Congress, the courts may not enlarge their jurisdiction by permitting the unions to sue in federal court. *See Teamsters, Local 20 v. Leu,* 94 L.R.R.M. 2510 (N.D.Ohio 1976) ("The statutory language confers upon the union as a unit no right to sue its officers. Unions are left to the state law jurisdiction they have always had."); *Local 624, Int'l Union of Operating Eng'rs v. Byrd,* 659 F.Supp. 274, 276 (S.D.Miss.1986); *International Bhd. of Boilermakers v. Freeman,* 683 F.Supp. 1190, 1192 n. 4 (N.D.Ill.1988) ("In our view, [BRAC] represents an unjustified assumption of

judicial power."); *Truck Drivers v. Baker,* 473 F.Supp. 1120, 1124 (M.D.Fla.1979).

We conclude that it would in fact frustrate congressional intent to relegate the union to state remedies. The legislative history of the LMRDA shows that Congress enacted the fiduciary provisions of section 501 because existing state law remedies for union officials' misconduct were inadequate. The Senate report contains a minority statement complaining about the lack of fiduciary provisions in the Senate bill: "Only one state has enacted a statute imposing fiduciary obligations on union officials and giving union members a right to sue in the event of any breach thereof." S.Rep. No. 187, 86th Cong., 1st Sess. *reprinted in* 1959 U.S.C.C.A.N. 2318, 2376. The LMRDA as passed contains broader fiduciary obligations than the Senate bill. The House Report contains a statement of supplementary views stating:

> We affirm that the committee bill is broader and stronger than the provisions of S. 1555 which relate to fiduciary responsibilities. S. 1555 applied the fiduciary principle to union officials only in their handling of "money or other property" (see S. 1555, sec. 610), apparently leaving other questions to the common law of the several States. Although the common law covers the matter, we considered it important to write the fiduciary principle explicitly into Federal labor legislation. Accordingly the committee bill extends the fiduciary principle to all the activities of union officials and other union agents or representatives.

H.R.Rep. No. 741, 86th Cong., 1st Sess. *reprinted in* 1959 U.S.C.C.A.N. 2424, 2479-80. We conclude from this background that Congress intended to supplement the remedies available to unions by creating new federal protections. *Accord Glenn v. Mason,* No. 79 Civ. 3918 (S.D.N.Y. Aug. 18, 1980). *But see Crosley v. Katz,* 131 L.R.R.M. 2175, 2176-2177, 1988 WL 94283 (E.D.Pa.1988) (noting that

one Senate bill expressly provided for suits by unions and that bill's provisions were not adopted).  It would make no sense to impose federal duties and simultaneously deny the unions the right to enforce those duties.

If Congress had only enacted section 501(a) without section 501(b), no one would suggest that Congress meant to deny the union the right to enforce 501(a).  However, because section 501(b) mentions federal jurisdiction over suits by individuals but does not explicitly refer to federal suits by unions, some courts have inferred that Congress must have meant to exclude the possibility of federal jurisdiction over unions' claims.  *See, e.g., Leu,* 94 L.R.R.M. at 2510 ("This remedy is new, specific, and limited.").  *Expressio unius est exclusio alterius.*

The Seventh Circuit rejected this type of argument when considering an analogous question in *Hood v. Journeymen Barbers,* 454 F.2d 1347, 1350-1354 (7th Cir.1972).  There, individuals sued their union, its board and the members of its Pension Plan Committee.  The Pension Plan Committee members argued that section 501(a) did not apply to them because, although they might be said to fall within section 501(a)'s terms, section 501(a) did not refer to pension trustees specifically, as section 502(a) did.  The Seventh Circuit refused to conclude that Congress's silence implied an intent to exclude the pensions.  Instead, the Seventh Circuit looked to the purpose of section 501(a):  "The Section, as we see it, was a direct and far-reaching response to the mischief exposed and dramatized by the McClellan Committee.  That mischief was the misuse of union funds and property by union officials in its every

manifestation." *Id.* at 1354. The court concluded that section 501 did in fact extend to the pension committee members.

Here, section 501(b) clearly shows that it has not one, but two purposes: first, to enable individuals to sue on the union's behalf, and second, to make sure that individuals do not preempt a union's right to prosecute its own claims. Section 501(b) itself makes the first purpose subservient to the second. We should not infer from the mention of individual suits that Congress did not intend to give unions a cause of action. It is far more in keeping with the statute as a whole to conclude that, having given the unions certain rights, Congress thought it implicit that the unions could enforce those rights in court. Allowing the individuals to assert the unions' claims was more extraordinary and therefore had to be spelled out.

Moreover, reading section 501(a) as providing a cause of action for individual union members, but not for the union itself, would encourage the unions to refuse their members' requests to sue offending officials. Only by refusing the members' requests could the union fulfill the prerequisite under section 501(b) for creating federal jurisdiction—though an individual, rather than the union, would have to serve as plaintiff. Thus, interpreting section 501 to create a federal cause of action for individuals to vindicate the unions' rights, but not for the unions themselves to do so, would require the union to forego its right to sue in order to obtain federal jurisdiction for the derivative claim. *See Operative Plasterers v. Benjamin,* 776 F.Supp 1360, 1366 (N.D.Ind.1991). This interpretation would make the individual's

demand under section 501(b) into a meaningless formality.

On the other hand, if we conclude that the union has a federal cause of action, the demand requirement functions properly, to give the union a chance to sue first, if it will.

Therefore, we cannot interpret section 501 in such a way as to frustrate Congress's apparent purpose in enacting it. We conclude that section 501(a) was intended to create a federal cause of action that can be asserted by the union on its own behalf.

Once we have determined that a federal cause of action exists, the statute granting jurisdiction over cases arising under federal law provides jurisdiction for this suit. 28 U.S.C. § 1331 (1994).[4]

## II.

The union also relies on section 301 of the LMRA, 29 U.S.C. § 185(a), to provide jurisdiction. Section 185(a) provides jurisdiction over contract suits "between any ... labor organizations [representing employees in an industry affecting commerce]." The union asserts a claim based on its union constitution, which is a "contract" claim under section 301. *Plumbers v. Local 334,* 452 U.S. 615, 627, 101 S.Ct. 2546, 2553, 69 L.Ed.2d 280 (1981).

---

[4]The trustees make some argument that section 501(a) does not apply to them because any possible breach of trust occurred when they had the property transferred to themselves as trustees, and this antedated any relationship with the plaintiff international union. To the contrary, the trustees are being sued by the international union on behalf of its former local for selling land they allegedly held in trust for the former local. The fact that the trustees are no longer officers of the union is immaterial, since they are being sued for abuse of the trust which they enjoyed by virtue of their union offices. *See Benjamin,* 776 F.Supp. at 1367.

The defendants argue that section 185(a) does not extend to claims against individual officers, citing *Complete Auto Transit, Inc. v. Reis,* 451 U.S. 401, 417, 101 S.Ct. 1836, 1845-46, 68 L.Ed.2d 248 (1981), and *Traweek,* 867 F.2d at 508. To the contrary, we have affirmed a case in which the district court asserted section 185(a) jurisdiction over individual defendants. *International Bhd. of Boilermakers v. Local Lodge D111,* 681 F.Supp. 1570 (S.D.Ga.1987), *aff'd,* 858 F.2d 1559, 1560 n. 1 (11th Cir.1988), *cert. denied,* 490 U.S. 1047, 109 S.Ct. 1955, 104 L.Ed.2d 424 (1989). *See also Tile, Marble, Terrazzo Shopworkers v. Local 32,* 896 F.2d 1404, 1416 (3d Cir.1990); *International Bhd. of Boilermakers v. Olympic Plating,* 870 F.2d 1085 (6th Cir.1989); *International Bhd. of Boilermakers Local Lodge 714,* 845 F.2d 687 (7th Cir.1988); *International Bhd. of Boilermakers v. Freeman,* 683 F.Supp. 1190, 1191 (N.D.Ill.1988).

The district court in *Local Lodge D111* observed there can be no action for *damages* against individuals under section 185(a). *Lodge D111,* 681 F.Supp. at 1572 n. 1 (citing *Reis,* 451 U.S. at 427, 101 S.Ct. at 1850-51). However, the union has expressly limited its section 185(a) claim to seek only equitable relief. This fact distinguishes our case from *Traweek,* 867 F.2d at 508, which was a suit for money damages. *See Benjamin,* 776 F.Supp. at 1367 (distinguishing *Traweek* ). *Cf. Local 443, Int'l Bhd. of Teamsters v. Pisano,* 753 F.Supp. 434 (D.Conn.1991) (section 185(a) does not authorize suit against individuals for money damages). This case is also distinguishable from *Traweek* in that it involves an international union's dispute with local officials, rather than a

strictly internal dispute within the local.  *See id.*

The defendants distinguish *Local Lodge D111,* because both the union and its representatives were sued in that case.  The defendants argue that without the union defendant in *Local Lodge D111,* there would not have been section 185(a) jurisdiction.  The Second Circuit considered this question in *Shea v. McCarthy,* 953 F.2d 29, 32 (2d Cir.1992).  There, the Second Circuit explicitly held that an individual defendant may be sued alone (without also joining a union as defendant) under section 185(a) for violating the union constitution, as long as the relief sought is equitable, not legal.  We therefore conclude that there is jurisdiction over the union's section 185(a) claim as stated.

Accordingly, we must REVERSE the district court's dismissal of this case, and REMAND for further proceedings.