George A. MAYES, Plaintiff

v.

**LOCAL 106, INTERNATIONAL UNION OF OPERATING ENGINEERS, Willard J. Large, Business Manager, Diane O'Hare, Office Manager and Lester Jones, President, Defendants.**

No. 86–CV–41.

United States District Court,
N.D. New York.

June 25, 1990.

Walter Thayer Long & Mishler, Albany, N.Y., for plaintiff; Lanny E. Walter, of counsel.

Lombardi Reinhard Walsh & Harrison, Albany, N.Y., for defendants; Thomas J. Jordan, of counsel.

## MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

### Introduction

The plaintiff, George A. Mayes, brought suit against his union, Local 106, International Union of Operating Engineers, AFL–CIO ("Local 106" or "Union"), and three of its officers, alleging that the defendants discriminated against him in job referrals and denied him certain rights guaranteed under the Labor–Management Reporting and Disclosure Act, 29 U.S.C. § 401 *et seq.* ("LMRDA"). The defendants brought a number of counterclaims against the plaintiff, alleging, among other things, that the defendants incurred expenses in defending against baseless charges brought by the plaintiff against two union members. Certain of the counterclaims have been dropped by the defendants. The remaining counterclaims assert causes of action based in tort, breach of contract and breach of the Union constitution and by-laws, pursuant to 29 U.S.C. § 185. The plaintiff now moves for summary judgment dismissing the remaining counterclaims, on the grounds that he filed the charges in a good faith exercise of his rights under the LMRDA and the Union constitution, and

that the court lacks jurisdiction over the counterclaims.

### Background

At issue for the purposes of this motion are charges filed by the plaintiff with the Union against James Tommaney, recording correspondence secretary for the Union, and Dan Lewis, the president of a firm called Lewis Crane Service, which performed work under contracts with the Union. Plaintiff alleged in the charges, filed in 1985, that Tommaney refused to provide him with copies of certain contracts between Local 106 and Dan Lewis or Lewis Crane Service, to which he was legally entitled, and that Lewis provided false information regarding plaintiff's employment with him in 1984 to the New York State Unemployment Insurance Board. Both charges were heard before the local Union's Executive Board, and were dismissed. Plaintiff appealed both charges to the general executive board of the International Union, but the appeal was denied.

In their second amended answer, the defendants have counterclaimed for the expenses they claim to have incurred in the defense of these charges, which they maintain were brought by plaintiff in bad faith with a deliberate intent to injure Local 106. The defendants allege that plaintiff's actions were in violation of Local 106's constitution and by-laws, contributing to labor instability and therefore creating a cause of action under 29 U.S.C. § 185. The defendants also raise state law claims based in tort and breach of contract. The defendants assert that the court should exercise pendent jurisdiction over the state law claims because they arise out of the same transactions or occurrences as the subject matter of the plaintiff's claim, pursuant to Fed.R.Civ.P. 13(a). The plaintiff argues in his motion to dismiss the counterclaims that he is entitled to bring charges against members of his union under the LMRDA and the Union constitution, and that the court lacks jurisdiction over the counterclaims. Plaintiff also argues that the defendants have failed to properly plead their tort and breach of contract claims. The

court heard oral argument on the motion on April 3, 1990.

## Discussion

Plaintiff asserts in his motion papers that his filing of charges against Tommaney and Lewis was an exercise of his right to free speech conferred by the LMRDA, codified at 29 U.S.C. § 411. Section 411(a)(2) provides, in pertinent part:

> Every member of any labor organization shall have the right to ... express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings....

The right to file charges against other union members is also conferred in Section XXIV of Local 106's constitution. Plaintiff argues that he had good reason to file the charges, and that no issue of material fact exists as to his filing of the charges which would preclude his motion for summary judgment.

■ Defendants argue, on the other hand, that plaintiff filed the charges as a vendetta against Tommaney and Lewis, and violated his duty to refrain from conduct which would interfere with the Union's performance of its legal or contractual obligations. Under the provisions of the LMRDA, particularly 29 U.S.C. § 411, a union member has the right to make statements regarding the operation and management of his union, and to file charges against other union members or union officials, without reprisal from the union. *Salzhandler v. Caputo,* 316 F.2d 445, 446 (2d Cir.1963). However, this privilege has some limitations. Following the portion of 29 U.S.C. § 411(a)(2) which confers on union members the right to free speech and assembly regarding union affairs, the statute reads:

> *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

(emphasis in original).

This portion of the statute has been interpreted to mean that a union member's right to free speech is limited to conduct and statements not contrary to the responsibility of union members toward the organization as an institution or which do not interfere in the union's performance of its legal or contractual obligations. *See Pearl v. Tarantola,* 361 F.Supp. 288, 293 (S.D.N.Y. 1973). Although plaintiff contends that his charges against Tommaney and Lewis were well-founded, Tommaney and Lewis submit affidavits to the contrary. Tommaney states in his affidavit that despite plaintiff's assertion that he was legally entitled to the documents he requested, in fact he was not. In addition, Tommaney states, even though plaintiff was eventually provided with all the documents he requested, he nevertheless filed the charge against Tommaney. Lewis states in his affidavit that the information he provided upon request to the Unemployment Insurance Board, i.e., that he had work available and that the plaintiff refused it because he wanted to wait for a better job, was true. These factual disputes are material to whether plaintiff acted in good faith, and whether his conduct fell within the protections of Section 411(a)(2). The existence of a malicious motive is generally a question to be ruled upon by the trier of fact. *Rodgers v. Grow–Kiewit Corp.,* 535 F.Supp. 814 (S.D.N.Y.1982).

■ In addition, the plaintiff alleges that the court lacks jurisdiction over the counterclaims. Although the portion of plaintiff's memorandum of law on this point is somewhat unclear, the apparent basis for his contention is that 29 U.S.C. § 185, the jurisdictional section of the LMRDA, does not confer jurisdiction over a suit by a

union against an individual union member.[1] A district court in the Second Circuit has held that it had jurisdiction over an action brought by a union against its individual members under Section 185. *National Ass'n of Basketball Referees v. Middleton*, 688 F.Supp. 131 (S.D.N.Y.1988). Plaintiff's attorney contended at oral argument, however, that the holding in *National Ass'n of Basketball Referees* is limited to cases which involve breaches of the union constitution, and that defendants do not sufficiently make such a claim here. In *National Ass'n of Basketball Referees*, the union levied an assessment on its members, based on a union-wide referendum, to pay legal fees the union had incurred. The union then brought suit against three of its members who failed to pay their portion of the assessment, claiming that the assessment was levied in accordance with the union's constitution and by-laws, and that the three members were thus obligated to pay. The court first noted that a union constitution is a "contract" as defined in 29 U.S.C. § 185(a). *Id.* at 134 (citing *United Ass'n of Journeymen v. Local 334*, 452 U.S. 615, 621, 101 S.Ct. 2546, 2549–50, 69 L.Ed.2d 280 (1981)). In addition, the court remarked that several lower courts have extended the rationale underlying the *Journeymen* decision to grant jurisdiction under Section 185(a) in suits brought by union members against their own unions. *Id.* at 134–35; *see, e.g., Lewis v. Int'l Brotherhood of Teamsters*, 826 F.2d 1310, 1313 (3d Cir.1987); *Grasty v. Amalgamated Clothing and Textile Workers*, 828 F.2d 123 (3d Cir.1987); *Rodonich v. House Wreckers Union Local 95*, 624 F.Supp. 678 (S.D.N.Y. 1985). The court in *National Ass'n of Basketball Referees* further extended the *Journeymen* rationale, holding the converse to be true. The court stated that since a union member may sue his union for breach of the union constitution, the union may, on the same token, bring suit for violations of the union constitution against its members. *National Ass'n of Basketball Referees*, 688 F.Supp. at 135.

Here, the defendants allege that plaintiff's actions toward Lewis and Tommaney were in violation of the Union's constitution, its by-laws, and the Union's collective bargaining agreement, thereby contributing to labor instability. The Union constitution, at the time of the commencement of this suit, contained a provision which stated that one of the purposes of the Union was to promote harmony among Union members, and other clauses which provide for penalties for activities which create dissension among the membership or interfere with the Union's activities.[2] Following the

---

1. Title 29 U.S.C. § 185, titled "Suits by and against labor organizations," reads, in pertinent part:

    (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties . . .

    . . . (c) For the purposes of actions and proceedings by or against labor organizations in the district courts of the United States, district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members. . . .

2. The paragraphs which contained specific reference to these provisions, along with other

portions of the counterclaims, were dismissed by order of the court dated July 9, 1987, pursuant to an agreement between the parties. Nevertheless, the counterclaims still contain allegations that plaintiff violated the union's constitution and by-laws, and its collective bargaining agreement. The provisions of the constitution referred to in the text are as follows:

Art. I, Section 2 of the Constitution states, in part:

    The objects and purposes of this organization are to . . . cultivate feelings of friendship among the men of the craft and those who may employ its members . . . to promote the health, welfare and safety of its members and their families; to . . . further . . . the joint interest of the members of the International Union in the betterment of general economic and social conditions of the world . . . while preserving the integrity and autonomy of this International Union. . . .

Art. XVI, Section 1 of the Constitution states, in part:

    . . . any member . . . engaging in conduct that would interfere with the performance by the

holding in *National Ass'n of Basketball Referees*, the court has jurisdiction under Section 185(a) to entertain the defendants' counterclaims alleging violations of the Union constitution.

With respect to plaintiff's claims that the tort and breach of contract claims are insufficiently plead, the counterclaims can be fairly read to properly assert both claims. The elements of a prima facie tort in New York are "the inflicting of intentional harm, resulting in damage, without excuse or justification, by an act or series of acts that would otherwise be lawful." *ATI, Inc. v. Ruder & Finn, Inc.*, 42 N.Y.2d 454, 458, 398 N.Y.S.2d 864, 368 N.E.2d 1230 (1977). Defendants allege in their counterclaims that the plaintiff filed the charges with malice and a deliberate intent to injure Local 106, that he did so without justification, and that the Union suffered damages as a result. Plaintiff also alleges that the defendants do not properly allege a breach of contract because they do not identify which sections of the Union constitution, by-laws, or the collective bargaining agreement plaintiff allegedly violated. A complaint, or in this case a counterclaim, in a breach of contract action must, among other things, set forth the terms of the agreement upon which liability is predicated. *Chrysler Capital Corp. v. Hilltop Egg Farms, Inc.*, 129 A.D.2d 927, 514 N.Y.S.2d 1002, 1003 (3d Dept.1987). However, the plaintiff (or counterclaimant) is not required to attach a copy of the contract or to plead its terms verbatim. *Griffin Bros., Inc. v. Yatto*, 68 A.D.2d 1009, 415 N.Y.S.2d 114, 114–15 (3d Dept.1979). Here, while the paragraphs identifying and providing the text of the applicable provisions of the Union constitution and by-laws have been dismissed, the counterclaims still allege that the claims are based on those terms of the constitution and by-laws which "require, among other things, that each member such as plaintiff not engage in conduct which discredits or injures the union or its members." Para. Seventy–Fifth. This allegation sufficiently describes the terms upon which the claims are based, particularly because these same claims were identified to the plaintiff in the original counterclaims.

The parties also debate whether the counterclaims arose out of the same transaction or occurrence as the plaintiff's claims, and are thus compulsory under Fed. R.Civ.P. 13(a). They apparently do so because the federal courts have ancillary jurisdiction over claims that are compulsory in nature, but if a counterclaim is based on an independent transaction and is permissive in nature, an independent jurisdictional basis is required. *Wasserman v. Fidelity and Deposit Co.*, 490 F.Supp. 564 (S.D.N.Y. 1979). This distinction is unnecessary to make here, since under the permissive counterclaim rule in Fed.R.Civ.P. 13(b), the court may dispose of all claims between the parties in one proceeding whether or not they arose in the "same transaction." *Baker v. Gold Seal Liquors*, 417 U.S. 467, 94 S.Ct. 2504, 41 L.Ed.2d 243 (1974).

### Conclusion

By reason of all of the foregoing, plaintiff's motion for summary judgment pursuant to Fed.R.Civ.P. 56 dismissing the counterclaims is denied.

IT IS SO ORDERED.

International Union or any of its subordinate bodies of their legal or contractual obligations ... may be disciplined or expelled ... as the General Executive Board may determine.... Art. XXIV, Subdivision 7(e) of the Constitution states, in part:
  ... any member of a Local Union who ... wrongs a fellow member[;] ... who creates dissension among the members; who destroys the interest and harmony of the Local Union; ... who violates his obligation or any section of the Constitution, Rules, Edicts, and Ritual of the International Union ... may be disciplined or upon trial therefor and conviction thereof, be fined, suspended, or expelled from his Local Union.