Walter J. SHEA; Daniel C. Ligurotis; Joseph Trerotola; Jack D. Cox; Barbara A. Christe and Vincent Trerotola, Plaintiffs–Appellants,

v.

William J. McCARTHY and Weldon Mathis, Defendants–Appellees.

No. 190, Docket 91–7483.

United States Court of Appeals, Second Circuit.

Argued Sept. 19, 1991.

Decided Jan. 6, 1992.

Patrick J. Szymanski, Washington, D.C. (Robert M. Baptiste, Baptiste & Wilder, Washington, D.C., Daniel Engelstein, Vladeck, Waldman, Elias & Engelhard, New York City, of counsel) for plaintiffs-appellants.

Rudolph F. Pierce, Boston, Mass. (Denis M. King, Goulston & Storrs, Boston, Mass., Brian E. Maas, Beldock Levine & Hoffman, New York City, James T. Grady, Gen. Counsel for IBT, Washington, D.C., of counsel) for defendants-appellees.

Before VAN GRAAFEILAND, MESKILL and MAHONEY, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Walter Shea, Daniel Ligurotis, Joseph Trerotola, Jack Cox, Vincent Trerotola and

Barbara Christe appeal from a judgment of the United States District Court for the Southern District of New York. (McKenna, J.) dismissing Count I of their complaint, on defendants' Rule 12 motion, for lack of subject matter jurisdiction. The district court also dismissed without prejudice several other Counts in the complaint alleging violations of the Labor–Management Reporting and Disclosure Act and RICO, but these dismissals are not challenged on the present appeal.

Plaintiffs are members of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL–CIO (IBT). Defendant McCarthy is IBT's General President, and defendant Mathis is its General Secretary–Treasurer. Plaintiffs' principal contention in Count I is that McCarthy misused his position and violated plaintiffs' rights under IBT's constitution in order to assist persons favored by him in elections conducted pursuant to a consent decree entered into between IBT and the Government. *See United States v. Int'l Bhd. of Teamsters,* 742 F.Supp. 94 (S.D.N.Y.1990), *modified,* 931 F.2d 177 (2d Cir.1991). Plaintiffs allege among other things that McCarthy removed or attempted to remove them from various Union positions because they exercised their free speech rights and refused to support McCarthy and his political allies; that he appointed other individuals to important Union positions on condition that they would support whatever actions he might take; that he engineered the filing of Union charges against plaintiff Cox; that he took these actions as part of a "deliberate and systematic plan" to suppress dissent. They seek equitable relief.

Plaintiffs allege that the district court had jurisdiction over Count I under section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), which provides in pertinent part that "[s]uits for violation of contracts between ... labor organizations" representing employees in an industry affecting interstate commerce may be brought in a United States District Court. The district court dismissed this Count on the ground that it was clear from the face of the complaint that this was not an action on a contract between labor organizations. For the reasons that follow, we reverse.

Although judicial treatment of a union constitution as a contract has not been without its critics, *see* Clyde W. Summers, *Legal Limitations on Union Discipline,* 64 Harv.L.Rev. 1049, 1055 (1951), this practice was established well before the 1947 enactment of section 301. *See Int'l Ass'n of Machinists v. Gonzales,* 356 U.S. 617, 618–19, 78 S.Ct. 923, 924–25, 2 L.Ed.2d 1018 (1958); Note, *Applying the "Contracts Between Labor Organizations" Clause of Taft–Hartley Section 301: A Plea for Restraint,* 69 Yale L.J. 299, 302 n. 24 (1959). Moreover, it has survived the enactment of that section. *See Scofield v. NLRB,* 394 U.S. 423, 426, 89 S.Ct. 1154, 1154, 22 L.Ed.2d 385 (1969); *Cleveland Orchestra Comm. v. Cleveland Fed'n of Musicians, Local No. 4,* 303 F.2d 229, 230 (6th Cir.1962); *Talton v. Behncke,* 199 F.2d 471, 473 (7th Cir.1952). In substance, the courts that adopt this contractual concept are applying the same law to labor organizations as is applied to other unincorporated associations:

> Generally, members of these associations gain admission by agreement with the rest of the membership. This agreement is frequently contractual; when so, it will be enforced by the courts as any other contract:
>
> > "The constitution and by-laws of an unincorporated association express the terms of a contract which define the privileges secured and the duties assumed by those who have become members."

2 Samuel Williston & Walter H.E. Jaeger, *A Treatise on the Law of Contracts* § 307, at 434 (3d ed. 1959) (quoting *Polin v. Kaplan,* 257 N.Y. 277, 281, 177 N.E. 833 (1931)).

It does not require a great stretch of logic to apply the same contractual concept to the relationship between an international union and its locals, which are organizations or associations of employees. This application also had wide acceptance at the time section 301 was enacted, *United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus. v. Local*

*334,* 452 U.S. 615, 621–22, 101 S.Ct. 2546, 2549–50, 69 L.Ed.2d 280 (1981) [hereinafter *Journeymen*], and it clearly is the law today, *id.* at 622–27, 101 S.Ct. at 2550–53. In *Journeymen,* the Supreme Court held that the district court had jurisdiction under section 301(a) to hear a suit brought by a local union against its parent international union alleging a violation of the international union's constitution. The Court stated that "Congress intended the federal courts to enjoy wide-ranging authority to enforce labor contracts under § 301," *id.* at 627, 101 S.Ct. at 2553, and held that union constitutions are contracts between labor organizations within the meaning of section 301(a). *Id.* However, the Court found it unnecessary to decide whether individual members could bring suit on a union constitution against a labor organization. *Id.* at 627 n. 16, 101 S.Ct. at 2553 n. 16.

In *Wooddell v. Int'l Bhd. of Elec. Workers, Local 71,* — U.S. —, 112 S.Ct. 494, 116 L.Ed.2d 419 (1991), the Court resolved the issue left open in *Journeymen,* holding that section 301(a) extends to suits on union constitutions brought by individual union members. *Id.* at 499. The Court relied principally on *Journeymen* and *Smith v. Evening News Ass'n,* 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962), a case in which the Court held that an employee-member could bring suit under section 301(a) for violation of a collective bargaining agreement. The Court stated in *Smith* that the word "between" in section 301(a) qualified the word "contracts", not "suits", and rejected the argument that section 301(a) did not cover suits brought by individual employees. *Id.* at 200, 83 S.Ct. at 270. In so doing, the Court emphasized the importance of individual employees' rights under collective bargaining agreements. *Id.* It also recognized that, absent section 301(a) jurisdiction, a disruptive divergence might occur between claims of individual members and identical claims of unions, the former being governed by state law and the latter by federal law. *Id.* at 200–01, 83 S.Ct. at 270–71.

The *Wooddell* Court found these principles equally applicable to suits by individual members on union constitutions. It followed *Journeymen* in holding that a suit alleging that a union had violated its constitution was a suit based upon a contract between labor organizations and echoed *Smith* in emphasizing the importance of permitting suits by union members for breach of union contracts.

> If suit by an employee to enforce an interunion contract is not authorized by § 301 and the employee is remitted to state court and to state law, it is plain that the same contract terms might be given different meanings based solely on the identity of the party. This would exert the disruptive influence our cases have spoken of.

*Wooddell, supra,* 112 S.Ct. at 500. The Court also rejected arguments that enactment of the Labor–Management Reporting and Disclosure Act of 1959 impliedly narrowed the reach of section 301(a) and that finding section 301(a) jurisdiction would result in the inundation of federal courts with trivial intraunion matters. *Id.*

*Wooddell* having thus answered in the affirmative the question whether union members may sue their union under section 301(a) for violations of the union constitution, the question we now must answer is whether section 301(a) authorizes similar suit against union officials who perpetrate the constitutional violation. We hold that it does.

■ It is recognized in the common law that a single contract may be a complex transaction involving multiple promisors and multiple promisees. *See Restatement (Second) of Contracts* § 9 (1979); 4 Arthur L. Corbin, *Corbin on Contracts* § 940, at 792 (1951). Although IBT's constitution is not a product of the common law, its complexities alone do not negate its being treated in some respects as if it were. "[A] union constitution is a 'contract' within the plain meaning of § 301(a)...." *Journeymen, supra,* 452 U.S. at 622, 101 S.Ct. at 2550. It is a contract between IBT and its local unions. *See id.* at 624, 101 S.Ct. at 2551. It is also a contract between IBT and its members. *See Scofield, supra,* 394 U.S. at 426, 89 S.Ct. at 1156; *Int'l Ass'n of*

*Machinists, supra,* 356 U.S. at 618, 78 S.Ct. at 924; *Parks v. Int'l Bhd. of Elec. Workers,* 314 F.2d 886, 893 (4th Cir.), *cert. denied,* 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142 (1963); *Cleveland Orchestra Comm., supra,* 303 F.2d at 230. Finally, as is the case with any unincorporated association, it is a contract between and among the members themselves. *Talton, supra,* 199 F.2d at 473; *Cruise v. Castleton, Inc.,* 449 F.Supp. 564, 570 (S.D.N.Y. 1978); *Local 1104, United Elec., Radio & Machine Workers v. Wagner Elec. Corp.,* 109 F.Supp. 675, 677 (E.D.Mo.1951); 7 C.J.S. *Associations* § 6b (1980). It is all of these things—yet it is but one document. The fact that it is a contract "between ... labor organizations" within the meaning of section 301(a) does not make it any the less a contract to which IBT and all of its members are parties and which is binding on all of them.

■ Upon joining IBT, each member agrees to faithfully observe the constitution and laws of the International and the bylaws and laws of his local; to comply with all rules and regulations for the government of the International and his local; to faithfully perform all the duties assigned to him to the best of his ability and skill; to conduct himself in such a manner as not to bring reproach upon the Union; to never knowingly harm a fellow member; to never discriminate against a fellow worker because of race, religion, sex, etc.; and to refrain from any conduct that would interfere with the Union's performance of its legal or contractual obligations. IBT Constitution Art. II, § 2(a). The interests of accountability, consistency, conformity and stability, emphasized in *Smith, supra,* will be served if union officials who violate obligations thus assumed are subject to suit under section 301(a) by other members whose interests are affected adversely. Because recovery in such suits would be equitable in nature only, there is little likelihood that permitting policing in this manner would result in a plethora of trivial suits.

Although union officials often are joined as parties-defendant in actions seeking injunctive relief against unions, *see, e.g., Wooddell, supra,* there is a paucity of appellate authority as to whether they may be sued alone for violating their obligations under the union constitution. In *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 562, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976), the Court made the blanket assertion that "[s]ection 301 contemplates suits by and against individual employees as well as between unions and employers." However, in a subsequent decision, the Court said that the above-quoted statement was not a holding and should not be treated as such. *Complete Auto Transit, Inc. v. Reis,* 451 U.S. 401, 415 n. 17, 101 S.Ct. 1836, 1844 n. 17, 68 L.Ed.2d 248 (1981). In *Complete Auto Transit,* the Court held that section 301 did not sanction damage actions against individual employees for violation of a collective bargaining agreement's no-strike provision. *Id.* at 417, 101 S.Ct. at 18. The Court expressly reserved decision on whether injunctive relief could be sought under section 301. *Id.* at 415 n. 17, 101 S.Ct. at 1844 n. 17.

There is, however, substantial authority in the lower courts to the effect that individual defendants may be subject to liability for violations of union constitutions. *See, e.g., Mayes v. Local 106, Int'l Union of Operating Engineers,* 739 F.Supp. 744, 746–48 (N.D.N.Y.1990); *Nat'l Ass'n of Basketball Referees v. Middleton,* 688 F.Supp. 131, 134–35 (S.D.N.Y.1988); *Int'l Bhd. of Boilermakers v. Freeman,* 683 F.Supp. 1190, 1191 (N.D.Ill.1988); *Int'l Bhd. of Boilermakers v. Local Lodge D111,* 681 F.Supp. 1570, 1572 & n. 1 (S.D.Ga.1987), *aff'd,* 858 F.2d 1559 (11th Cir.1988), *cert. denied,* 490 U.S. 1047, 109 S.Ct. 1955, 104 L.Ed.2d 424 (1989); *Gordon v. Winpisinger,* 581 F.Supp. 234, 240 (E.D.N.Y.1984).

To the extent that these cases deal with equitable relief, we agree with them. Because unions necessarily act in large part through their officers, alleged violations of union constitutions by union officers implicate important concerns. If, as it now appears, an individual can sue his union under section 301(a) because one or more of its officers or agents violated the union consti-

tution, it makes no sense to require the plaintiff to seek equitable relief from the wrongdoing individuals in a separate forum, where different rules of law might apply.

We reverse so much of the judgment below as dismisses Count I of the complaint for lack of subject matter jurisdiction and remand to the district court for further proceedings. We express no opinion as to the merits of plaintiffs' Count I allegations.