John A. Ziegler, Furlong and Delmonte, P.C. Williamsville, New York, for Plaintiff.

Richard G. Collins, Buffalo, NY, for Defendant.

## INTERNATIONAL UNION OF OPER-ATING ENGINEERS LOCAL UN-ION NO. 17, Plaintiff,

v.

### John C. LEXO, Defendant.

### No. 94–CV–766H.

United States District Court, W.D. New York.

Aug. 18, 1995.

## DECISION AND ORDER

HECKMAN, United States Magistrate Judge.

The parties have consented to final disposition of this case before the Magistrate Judge pursuant to 28 U.S.C. § 636(c). Plaintiff has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that follow, plaintiff's motion is denied, and the case is dismissed pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction.

### *BACKGROUND*

On November 1, 1993, Robert Pritchard, the Recording Secretary and Business Representative of Local 17 of the International Union of Operating Engineers ("IUOE"), saw defendant John Lexo working within Local 17's jurisdiction. Pritchard approached defendant and informed him that he had to sign a contract and receive clearance before he could perform work in the jurisdiction of Local 17, in accordance with the IUOE constitution.[1] Defendant Lexo is

---

1. Article XV, Section 3(a) of the IUOE constitution provides in part:

    Members of one Local Union shall not seek employment, be employed, or remain at work at the craft within the territorial jurisdiction of another Local Union without the consent of such Local Union....

a member of IUOE Local 463, and has been since March 7, 1978. He did not respond.

On December 1, 1993, defendant was again seen working in Local 17's jurisdiction. This time Gerald Thompson, the Business Representative of Local 17, left two contract books with the job foreman for Lexo to sign. On December 14, 1993, after repeated attempts, Thompson finally contacted Lexo. Lexo informed Thompson that he did not intend to sign the contracts.

On December 16, 1993, Thompson brought charges against defendant for violating the IUOE constitution and the by-laws of Local 17 (Item 1, Ex. C). A letter was sent to Lexo's residence that same day informing him of the pending charges and explaining that, under the union constitution, Lexo had until January 10, 1994 in which to answer, defend, or enter a plea (Item 1, Ex. D). A letter was also sent to Winslow Hunt, the Recording Correspondence Secretary for IUOE Local 463 (Lexo's Local) informing Local 463 of the charges filed against Lexo (Item 1, Ex. E). The letters were sent certified mail, return receipt requested (Item 12, Ex. A). Lexo never claimed the letters and they were returned to Local 17.

On January 12, 1994, Pritchard sent defendant a second letter informing him that he was to appear for trial at the regular meeting of Local 17 on February 4, 1994 (Item 1, Ex. F). A copy of this letter was sent to Local 463. The letter was sent via certified mail, return receipt requested. Lexo never claimed this letter and it was returned to Local 17 (Item 12, Ex. B).

Lexo did not appear at the trial on February 4, 1994, and Local 17 conducted the proceeding in his absence, in accordance with the IUOE constitution. Not surprisingly, the membership of Local 17 found Lexo

guilty of working in its jurisdiction without clearance. Local 17's Financial Secretary, Thomas Hopkins fined Lexo in the amount of $5,000.00.

On February 8, 1994, a letter was sent to Lexo's home by certified mail, return receipt requested, informing him of the disposition of the trial and of his right to appeal to the General Executive Board of the IUOE. The letter also informed Lexo that his Local (Local 463) could not accept his dues until his fine was paid. A copy of the IUOE constitution was enclosed. This letter was also returned unclaimed. Lexo has not paid the fine.

Local 17 filed this action on October 24, 1992 under Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), seeking a judgment in the amount of $5,000.00. Defendant answered on December 19, 1994, asserting the defense that he did not breach the union constitution.

On January 20, 1995, plaintiff moved for summary judgment. According to plaintiff, because the federal district court has jurisdiction under LMRA § 301(a) over a suit brought by a union local against a member of another local to collect a fine imposed under the union constitution, and because there are no issues of fact to be tried regarding defendant's violation of the constitution, it is entitled to a judgment as a matter of law in the amount of $5,000.00 against defendant.

In his response to plaintiff's motion, defendant did not address the jurisdictional issue raised by plaintiff. Instead, he claims that he never received notice of the charges. In addition, defendant points out that the supporting affidavit accompanying plaintiff's motion is signed by plaintiff's attorney, not an affiant competent to testify to the matters stated therein.

Article XXIV, Subdiv. 7, Section (f) provides in part:

> All fines legally levied or imposed ... must be paid by the member involved ... within thirty (30) days.... Members thirty (30) days in arrears in the payment of fines shall be denied voice and vote in their Local Union, and thereafter until the fine is paid no dues owed by such member can be received or accepted by the Local Union.... Members sixty (60) days in arrears in the payment of fines shall be removed from committees, barred from meetings and suspended from membership. Members ninety (90) days in arrears shall be removed from office. Members six (6) months in arrears shall be expelled from membership. *In addition to the penalties provided for herein, Local Unions are authorized to secure the payment of fines through appropriate legal proceedings.*

(emphasis added) (Item 1, Ex. B).

On May 8, 1995 plaintiff submitted reply papers which included an affidavit from Gerald Thompson, reciting the facts relevant to this case. Plaintiff also submitted the certified mail receipts, showing that the letters sent to defendant were unclaimed.

At argument of the motion on May 25, 1995, the court directed the parties to submit supplemental briefs addressing the issue raised by plaintiff regarding the court's subject matter jurisdiction over the case. The parties filed their briefs and further argument was held on August 15, 1995.

## DISCUSSION

Section 301(a) of the Labor–Management Relations Act (LMRA) confers jurisdiction on the federal courts as follows:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry effecting commerce as defined in this chapter, or by any such labor organizations, may be brought in any district court in the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). The Supreme Court has interpreted the use of the word "contracts" in this statute to include union constitutions. *United Association of Journeymen & Apprentices of Plumbing and Pipefitting Industry v. Local 334,* 452 U.S. 615, 619, 101 S.Ct. 2546, 2548–49, 69 L.Ed.2d 280 (1981) ("*Journeymen*") (holding a union Local could sue its International affiliate for violation of the union constitution under § 185(a)). The Court justified this expansive interpretation as follows:

> [W]e cannot believe that Congress would have used the unqualified term "contract" without intending to encompass that category of contracts represented by union constitutions. Nothing in the language and legislative history of § 301(a) suggests any special qualification or limitation on its reach, and we decline to interpose one ourselves.

*Id.* at 624–25, 101 S.Ct. at 2551–52 (footnote omitted).

Following its logic in *Journeymen,* the Supreme Court has also recognized the right of an individual member of a local union to sue the local for injunctive relief and damages based on an alleged breach of the union constitution. *Wooddell v. Electrical Workers,* 502 U.S. 93, 112 S.Ct. 494, 116 L.Ed.2d 419 (1991). The Court reasoned as follows:

> If suit by an employee to enforce an inter-union contract is not authorized by § 301 and an employee is remitted to state court and to state law, it is plain that the same contract terms might be given different meanings based solely on the identity of the party.

*Id.* at 102, 112 S.Ct. at 500. The Court rejected the local's argument that such a construction of § 301 would "result in the inundation of the federal courts with trivial suits dealing with intra union affairs." *Id.*

Subsequent to the *Wooddell* decision, the Second Circuit held that individual union members may sue a union official under § 301(a) for equitable relief based on the official's alleged misuse of position and other conduct violative of the union constitution. *Shea v. McCarthy,* 953 F.2d 29, 32 (2d Cir. 1992). According to the court:

> The interests of accountability, consistency, conformity and stability ... will be served if union officials who violate obligations thus assumed are subject to suit under section 301(a) by other members whose interests are affected adversely. Because recovery in such suits would be equitable in nature only, there is little likelihood that permitting policing in this manner would result in a plethora of trivial suits.

*Id.* (citing *Smith v. Evening News Ass'n,* 371 U.S. 195, 200–01, 83 S.Ct. 267, 270–71, 9 L.Ed.2d 246 (1962)). The court noted the Supreme Court's decision in *Complete Auto Transit, Inc. v. Reis,* 451 U.S. 401, 101 S.Ct. 1836, 68 L.Ed.2d 248 (1981), which held that § 301 did not sanction damage actions against individual employees for violation of a collective bargaining agreement's no-strike clause, and which expressly reserved decision on whether injunctive relief could be sought under § 301. 953 F.2d at 32. The court also relied on a number of lower court decisions

for "substantial authority . . . to the effect that individual defendants may be subject to liability for violations of union constitutions . . . ," and agreed with those cases "[t]o the extent that [they] deal with equitable relief. . . ." *Id.*

*Shea* did not decide, nor did it address, the issue presented in this case—*i.e.*, whether § 301(a) provides subject matter jurisdiction over a suit by a local union against an individual member of another local to enforce a monetary fine imposed based on the local's determination that the member violated the union constitution and by-laws. In fact, none of the cases cited by the parties have directly decided or addressed this issue.

Plaintiff relies on *National Ass'n of Basketball Referees v. Middleton,* 688 F.Supp. 131 (S.D.N.Y.1988), and *Mayes v. Local 106, International Union of Operating Engineers,* 739 F.Supp. 744 (N.D.N.Y.1990), both cited in *Shea,* as authority for § 301 jurisdiction over contract actions brought by unions against individual union members. *Basketball Referees* involved a suit by the union to collect unpaid special assessments levied against all union members following a referendum of the entire union membership. Three union members refused to pay the assessments. When the union sued them in federal court, they raised the defense of lack of subject matter jurisdiction under § 301(a) based on the union's failure to pursue internal union procedures. 688 F.Supp. at 132–33.

The court rejected this defense. Noting that the case presented the "uncommon situation where a *plaintiff* union has brought a suit against *defendant* union members under § 301(a)," the court found that the alignment of the parties was not determinative of whether jurisdiction exists under the statute. 688 F.Supp. at 134. According to the court, "because . . . § 301(a) creates federal jurisdiction when a union member sues his or her union for breach of the union's constitution, it follows that § 301(a) jurisdiction exists" in a suit by the union against individual union members. *Id.* at 135.

However, in its discussion pertaining to exhaustion of internal union remedies, the *Basketball Referees* court carefully pointed out that there is a notable distinction between a claim involving an effort to enforce a special assessment levied upon all members following a vote of the entire union membership in accordance with a specific provision of the union constitution, and a claim stemming from "charges" filed against an individual union member as a result of the union member's alleged failure to perform a duty imposed by the constitution. *Id.* at 135–36. The court examined the internal remedies claimed by defendants to have been unexhausted—*i.e.*, defense to the charge, review of the defense, and appeal of the review—and found that these remedies did not apply to the "special assessment" situation presented. *Id.* at 136. According to the court, even if the union was required to pursue internal remedies prior to bringing suit under § 301, the union constitution did not provide any procedures that would have remedied the dispute. *Basketball Referees* was thus based in substantial part on the "exhaustion of remedies" doctrine, an issue not addressed or argued by the parties in this case despite ample opportunity to do so.

The complaint in this case involves not only a fine assessed as a result of a "charge" against an individual union member, but it also involves the local's attempt to collect the fine by suing in federal court without first pursuing the remedies for "Payment of Fines" set forth at Art. XXIV, Subdiv. 7, Section (f) of the union constitution (*see* Item 1, Ex. B). The *Basketball Referees* holding, therefore, does not provide convincing authority for finding subject matter jurisdiction under § 301(a) in this case.

*Mayes v. Local 106, International Union of Operating Engineers* is likewise not directly controlling. In *Mayes,* the plaintiff sued his local union and individual union officials for discrimination and denial of rights under the Labor–Management Reporting and Disclosure Act ("LMRDA"). The defendants filed counterclaims alleging that the action was brought in bad faith, thereby violating the obligations imposed by the union constitution and the collective bargaining agreement "to promote harmony among Union members" and to avoid dissension or interference with union activities.

739 F.Supp. at 747 & n. 2. The defendants claimed that the union suffered damages as a result of having to defend against these "baseless charges." *Id.* at 745. *Mayes* therefore did not involve the type of damages alleged in the present case, admittedly contractual in nature. This distinction was recognized as well by the Second Circuit in *Shea* when it relied on *Mayes* and *Basketball Referees* only "[t]o the extent that these cases deal with equitable relief...." *Shea v. McCarthy, supra,* 953 F.2d at 32.

Defendant relies on the Ninth Circuit's holding in *Building Material & Dump Truck Drivers, Local 420 v. Traweek,* 867 F.2d 500 (9th Cir.1989), which involved a suit brought under § 301 by a local union seeking recovery of approximately $50,000.00 from former officers of the local who had authorized the use of union funds to pay another union official's legal fees. The Ninth Circuit declined to exercise subject matter jurisdiction over the claim, finding that it was the intent of Congress, in enacting § 301, to shield individual union members from liability for damages. The court focused on the Supreme Court's analysis in *Journeymen* and *Reis,* and found no case in which an individual union member has been held to be a proper defendant under § 301(a). According to the court:

> Not every violation of a ... union constitution results in federal court jurisdiction. If we were to expand the jurisdictional scope of § [301] in the manner advocated by [the local], then a union could sue an individual union member in federal court for *any* failure to comply with by-laws or the constitution. Thus, any time a union member failed to pay dues or committed a minor infraction of union rules, the federal courts would provide a forum in which to demand payment or to settle internal squabbles.... Clearly this possibility does not comport with the congressional intent behind § [301].

867 F.2d at 508 (citations omitted).

Even closer to the issue presented in this case are *Baltimore Mailers Union No. 888 v. Moore,* 881 F.Supp. 217 (D.Md.1995), and *United Food & Commercial Workers Local 951 v. Mulder,* 812 F.Supp. 754 (W.D.Mich. 1993), *aff'd,* 31 F.3d 365 (6th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1095, 130 L.Ed.2d 1064 (1995), both of which are post-*Wooddell* cases dealing with a local union's attempt to collect money from individual union members under the union constitution or collective bargaining agreement. In *Baltimore Mailers,* the local sued in state small claims court to collect back dues from six of its members. The defendants removed the cases to federal court under § 301, relying on *Wooddell.* The court remanded the cases to the state court, stating that: "*Wooddell* ... only goes down a one-way street. That is, it was uniformly held before *Wooddell* was decided that Section 301 does not confer federal jurisdiction over suits seeking contract damages against an individual member for breach of, *e.g.,* a union constitution. The same result has been reached post-*Wooddell.*" 881 F.Supp. at 218 (citing *Shea v. McCarthy, supra,* and *Building Material & Dump Truck Drivers, supra,* 867 F.2d at 508).

In *United Food & Commercial Workers,* the local sued three members of the collective bargaining unit who had resigned from the union and had objected to the payment of service fees. The local referred the objections to an arbitrator under its internal mechanism for resolving fee disputes, and the arbitrator ruled in the local's favor. When the local sued in federal court to enforce the arbitrator's award, the district court declined to exercise § 301 subject matter jurisdiction over the case, citing *Complete Auto Transit, Inc. v. Reis, supra,* and *Building Material & Dump Truck Drivers, supra.* According to the court, an action by a union to enforce a monetary award against individual employees is adversarial in nature and therefore is not subject to § 301 jurisdiction. 812 F.2d at 757.

Finally, as already mentioned, plaintiff has not cited any cases in which the federal court has allowed a suit to enforce an award against an individual union member rendered pursuant to internal union procedures, a practice routinely allowed in state courts of competent jurisdiction. *See, e.g., Local 327, IUE v. Proper,* 154 Misc.2d 285, 584 N.Y.S.2d 977 (Sup. Columbia Co. 1991); *Bal-*

*las v. McKiernan*, 63 Misc.2d 432, 312 N.Y.S.2d 204 (N.Y.Civ.Ct.1970); *see also* cases cited at 13 A.L.R.3d 1000–06.

Accordingly, I find that the court lacks subject matter jurisdiction over this case, and that dismissal of the action is required pursuant to Fed.R.Civ.P. 12(h)(3).[2] *See Alliance of American Insurers v. Cuomo*, 854 F.2d 591, 605 (2d Cir.1988).

### CONCLUSION

Based on the foregoing, plaintiff's motion for summary judgment (Item 5) is denied and the case is **ORDERED** dismissed without prejudice, pursuant to Fed.R.Civ.P. 12(h).

**SO ORDERED.**

---

**2.** Fed.R.Civ.P. 12(h)(3) provides:
> Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.

Dismissal of an action for lack of subject matter jurisdiction is not an adjudication on the merits, and does not bar a subsequent action in a court of competent jurisdiction. 6 *Moore's Federal Practice* ¶ 56.03.